[No. 26380-7-II. Division Two. June 15, 2001.]

WILLIAM E. WEST, JR., *Appellant*, v. AUDREY M. OSBORNE, *Respondent*.

*Sharon M. Carter*, pro se.

*Gerald A. Horne, Prosecuting Attorney*, and *Douglas W. Vanscoy, Deputy*, for respondent.

MORGAN, J. — Sharon Carter sues individually and as guardian ad litem for her son, William West, Jr. She seeks damages from West's former guardian ad litem. The trial court granted summary judgment on the ground the guardian was immune. Carter argues on appeal that the trial court erred by permitting the county prosecutor to defend the guardian; by refusing to change venue; and by granting immunity. We affirm.

In April 1993, Sharon Carter, then Sharon West, and her husband, William West, were seeking dissolution of their marriage. They were also competing for custody of their

son, William West, Jr. On April 14, 1993, the court appointed Audrey M. Osborne to be the child's guardian ad litem (GAL).

Osborne interviewed witnesses, consulted therapists, reviewed public records, supervised visitations, testified at hearings, and filed reports. She ultimately recommended that the child be placed with his father, and the dissolution court followed her recommendation.

During and after these events, the relationship between Carter and Osborne was strained. On April 5, 1996, the court permitted Osborne to withdraw as guardian ad litem; restrained Carter and Osborne from contacting each other; and denied Carter's request for CR 11 sanctions against Osborne.

On March 10, 1999, Carter brought this action against Osborne. She claimed that Osborne had negligently "placed" the child with his father; that Osborne had "repeatedly, intentionally and willfully perjured herself;" that Osborne "was completely and totally incompetent and failed to perform her duties;" and that Osborne had "alienated [her son] from his mother" and from a "now deceased grandmother."[1] Carter did not sue Pierce County.

On April 6, 1999, Osborne appeared through the Pierce County Prosecuting Attorney[2] and moved for summary judgment. She argued that she was "being sued in connec-

---

[1] Clerk's Papers (CP) at 5. Carter elaborated in an amended complaint filed May 11, 1999. In that document, she alleged that Osborne "failed to perform her duties as required by law and acted with unacceptable recklessness and gross negligence"; "intentionally, repeatedly, willfully and maliciously caused severe, debilitating emotional trauma and distress"; "failed to contact even one of the mother's witnesses"; "failed to investigate the father, or to contact even one of his relatives"; "was an advocate for the father, defending his actions"; "failed to mail reports to the mother"; "failed to attend all the hearings, and left early at trial"; "abandoned her charge . . . for several months"; "used her daughter's influence on the Pierce County Sheriff's Dept. to intimidate, threaten, and influence her charge"; "used this influence indirectly, by Mr. West, threatening the mother, that Audrey's daughter works for the Pierce County Sheriff"; "conspired with the father, to withhold the child from the mother"; and "repeatedly and maliciously diagnosed the mother's mental health condition, without being qualified nor certified as a mental health counselor." CP at 28, 29, 30, 31.

[2] Osborne had appeared pro se two weeks earlier, but that fact is immaterial here.

tion with actions undertaken as a GAL," and that she was "absolutely immune from suit" "[u]nder the doctrine of quasi-judicial immunity."[3] On May 18, 1999, Carter responded that once discovery was complete, there would be "countless issues of fact against the Defendant" and "genuine issue[s] for trial."[4]

On the same date she responded to Osborne's motion for summary judgment, Carter moved to disqualify the prosecuting attorney from representing Osborne. She attached and relied on a 1995 memo from a deputy prosecuting attorney and a 1999 e-mail from an assistant risk manager. The memo discussed whether the Pierce County Code authorized the prosecutor to defend a guardian ad litem, and concluded that "appointment [of a guardian] by the court triggers the county's duty to defend against a lawsuit arising out of actions taken by this quasi-judicial officer while acting in good faith to perform his or her duties."[5] The e-mail confirmed that Pierce County would follow the memo and defend Osborne.

Before these motions were heard, several judges of the Pierce County Superior Court recused themselves from this case. This apparently caused Carter, on July 30, 1999, to move for a change of venue. She alleged in her motion that "[d]ue to the ongoing changing of judges . . . and no notification to the plaintiff, and due to the [g]uardian ad litem scandal commencing in Pierce County, plaintiffs believe they cannot have a fair and partial [sic] hearing in this County, and request[] the court for an Order to Change Venue to Mason County."[6]

Also on July 30, Judge Brian Tollefson convened a hearing during which he stated:

---

[3] CP at 15.

[4] *Id.* at 37.

[5] *Id.* at 45.

[6] *Id.* at 336.

[Court]: I think Ms. Carter has an issue whether or not there's fairness here; that the case ought to be heard in another county. What I think should happen is that we ought to have a visiting judge here to decide the issues, so that's what I'm going to recommend to our presiding—acting presiding judge, and that's what I was going to do this morning.

. . . .

[Court]: So I'm going to essentially recuse myself and return this to the presiding judge for reassignment and suggest to him that he get a visiting judge. That's what I'm going to do.[7]

Apparently choosing not to adopt Judge Tollefson's recommendation, the presiding judge assigned the case to Judge Larkin, who convened a hearing on August 27, 1999. The prosecutor opened that hearing by noting:

[Carter] has written a letter to you . . . in which she indicates that the case was in front of Judge Brian Tollefson in July. She indicates in the letter that Judge Tollefson ruled that he was going to forward the file to presiding Judge Cohoe to set the file up for a visiting judge. That's not my recollection of Judge Tollefson's ruling. Judge Tollefson indicated he had some concerns about a Pierce County judge hearing the case and said that he would send it to presiding to see if anybody else felt comfortable hearing the case.[8]

Judge Larkin then declined to recuse himself, citing the lack of any reasonable basis for recusal.

On September 24, 1999, the pending motions were finally heard. The court denied orders changing venue and disqualifying the prosecuting attorney. It granted a summary judgment of dismissal, reasoning that there were no genuine issues of material fact because Osborne was immune from suit. After unsuccessfully moving for reconsideration, Carter filed the present appeal.

---

[7] *Id.* at 540, 542.

[8] Report of Proceedings (RP) (Aug. 27, 1999) at 2.

I

■■■ Carter claims that the trial court was required to transfer the case to a different county. RCW 4.12.030(2) provides that a trial court may transfer a case to a different county when it appears by affidavit or other satisfactory proof "[t]hat there is reason to believe that an impartial trial cannot be had therein." We review a venue decision only for abuse of discretion.[9]

The question at the core of Carter's argument is whether Judge Larkin was biased and thus did not fairly preside over the case. Carter has produced nothing that would so show, or even so suggest. Accordingly, the present argument fails.

In reaching this result, we do not overlook Carter's emphasis on Judge Tollefson's oral remarks. Judge Tollefson's remarks, however, did not show that Judge Larkin—or any judge for that matter—could not be impartial.

Nor do we overlook Carter's bare allegations of a guardian ad litem "scandal." Without more, those allegations do not show that Judge Larkin could not be impartial.

Nor do we overlook Carter's passing reference to RCW 36.01.050. It provides that an action *against a county* may be brought in an adjoining county.[10] It does not apply here because Carter is not suing a county.

Finally, we do not overlook Carter's allegation that the prosecutor violated RPC 8.4(c) and (d)[11] by falsely repre-

---

[9] *Russell v. Marenakos Logging Co.*, 61 Wn.2d 761, 765, 380 P.2d 744 (1963).

[10] RCW 36.01.050(1) provides:

All actions against any county may be commenced in the superior court of such county, or in the superior court of either of the two nearest judicial districts. All actions by any county shall be commenced in the superior court of the county in which the defendant resides, or in either of the two judicial districts nearest to the county bringing the action.

[11] RPC 8.4 provides in relevant part:

It is professional misconduct for a lawyer to:

. . . .

senting to Judge Larkin on August 27 the nature of Judge Tollefson's remarks on July 30. The record shows that the prosecutor's comments were a fair approximation of the judge's ruling. We conclude that Judge Larkin did not err by declining to recuse himself, or by declining to change venue.

## II

Carter argues that the prosecutor's representation of Osborne constituted (A) an unconstitutional gift of public funds in violation of article VIII, section 7 of the Washington Constitution, and (B) a violation of the Pierce County Code.

## A

We reject Carter's article VIII claim for two reasons. First, she has not supported it with any argument or citation to legal authority.[12] Second, it obviously lacks merit. A county may use public funds to serve a fundamental purpose of government.[13] One such purpose is obtaining guardians ad litem, and thus a county may use public funds to pay such persons. It also may use public funds to defend such persons; otherwise, it could not find anyone willing to serve. Nothing in this case violated article VIII, section 7.

## B

Carter argues that the prosecutor violated the Pierce County Code by representing Osborne. Under PIERCE COUNTY CODE (PCC) 2.120.010, the county agrees, "as a condition of . . . acceptance of services to defend upon

---

(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) Engage in conduct that is prejudicial to the administration of justice[.]

[12] *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992); *Smith v. King*, 106 Wn.2d 443, 451, 452, 722 P.2d 796 (1986).

[13] *CLEAN v. State*, 130 Wn.2d 782, 797, 928 P.2d 1054 (1996); *Hudson v. City of Wenatchee*, 94 Wn. App. 990, 995, 974 P.2d 342 (1999).

proper request, all civil claims . . . for damages brought or maintained against its officers, employees and/or volunteers arising out of the acts, errors or omissions in the performance or good faith attempt to perform, the official duties of said officer, employee or volunteer." Under PCC 2.120.020, "[t]o properly request such a defense, the officer, employee or volunteer shall make a written request of defense to the Risk Manager and to the Prosecuting Attorney within seven days of receipt of notice of the filing of said claim or action." Under PCC 2.120.030, the county shall commence a defense of the claim or action "[u]pon a determination by the County Executive or Prosecuting Attorney . . . that the alleged acts, errors or omissions of the officer, employee or volunteer did in fact arise out of the performance or good faith attempt to perform their official duties."

Carter claims that the county violated these provisions because no one showed or determined Osborne was acting in good faith. From the plain language of the code, however, the county may defend either a claim arising out of performance or a claim arising out of a good faith attempt to perform. Here, where Osborne was actually performing her duties as guardian, the code did not mandate a finding of good faith.

Carter also claims that the county violated the PCC's provisions because Osborne did not request a defense in writing. In our view, however, the requirement of a written request is relevant to whether the county *must* defend, but not relevant to whether the county *may* defend. If as here the county is willing to defend in the absence of such a request, nothing in the Code bars it from doing so.

## III

Carter claims the trial court erred by granting Osborne quasi-judicial immunity. Such immunity "attaches to persons or entities who perform functions that are so comparable to those performed by judges that it is felt they

should share the judge's *absolute* immunity while carrying out those functions."[14] When it applies, it is an absolute bar to civil liability and necessarily leaves wronged claimants without a remedy.[15]

 Although no Washington case has applied quasi-judicial immunity to a guardian ad litem in a dissolution case, several have applied quasi-judicial immunity in similar circumstances. In *Adkins v. Clark County*,[16] the bailiff gave the jury a legal dictionary during deliberations. The trial court declared a mistrial, and one of the parties brought a new action against the county. The Supreme Court held that both the bailiff and the county were entitled to the same immunity as the judge.[17]

In *Barr v. Day*,[18] a party sued a guardian ad litem for negligently recommending the approval of a personal injury settlement. The trial court ruled that the guardian was immune, and the Supreme Court affirmed. The Supreme Court reasoned that the guardian ad litem was acting "as an arm of the court," and therefore was entitled to "quasi-judicial immunity from civil liability."[19]

In *Reddy v. Karr*, a court commissioner appointed an employee of King County Family Court Services to investigate which of two parents should receive custody of their child. The investigator recommended the father. The mother then sued the investigator for negligence, but the trial court granted summary judgment. Affirming, Division One of this Court held that the investigator was entitled to

---

[14] *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 99, 829 P.2d 746 (1992) (emphasis added), *cert. denied*, 506 U.S. 1079 (1993); *Savage v. State*, 127 Wn.2d 434, 441, 899 P.2d 1270 (1995) (quoting *Lutheran Day Care*, 119 Wn.2d at 99).

[15] *Lutheran Day Care*, 119 Wn.2d at 99; *Babcock v. State*, 116 Wn.2d 596, 606-08, 809 P.2d 143 (1991).

[16] *Adkins v. Clark County*, 105 Wn.2d 675, 717 P.2d 275 (1986).

[17] *Adkins*, 105 Wn.2d at 678.

[18] *Barr v. Day*, 124 Wn.2d 318, 332, 879 P.2d 912 (1994).

[19] *Barr*, 124 Wn.2d at 332.

quasi-judicial immunity because she was acting as an "arm of the court."[20]

This case is the same as those just described in that Osborne was acting as an arm of the court at all times. Accordingly, she is entitled to immunity, and the trial court did not err by ruling as it did.

Affirmed.

SEINFELD and HOUGHTON, JJ., concur.

Review denied at 145 Wn.2d 1012 (2001).

---

[20] *Reddy v. Karr*, 102 Wn. App. 742, 749, 9 P.3d 927 (2000). We omit *Babcock*, 116 Wn.2d at 618, even though Carter relies on it. That case concerned *personal qualified immunity*, not the *quasi-judicial immunity* that is at issue here.