FILED
COURT OF APPEALS
DIVISION II

2014 FEB 20 AM 9:23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOYCE KELLEY, individually, | No. 43983-2-II |
| Respondent, | (consolidated with No. 43986-7-II) |
| v. | |
| PIERCE COUNTY, a county corporation and MARK SKAGREN and "JANE DOE" SKAGREN, and the marital community composed thereof, | PART PUBLISHED OPINION |
| Appellants. | |

JOHANSON, A.C.J. — On discretionary review, we are asked whether quasi-judicial immunity should apply to Mark Skagren,[1] a guardian ad litem (GAL) appointed in a parental termination action who is alleged to have "used his authority, tasks, tools and premises of his job and assignment to stalk, prey, assault, batter and sexually harass" Joyce Kelley. Clerk's Papers (CP) at 2. Pierce County (County) and Skagren argue that the superior court should have applied quasi-judicial immunity and dismissed Kelley's claims because (1) Washington courts have applied quasi-judicial immunity to GALs in the past and (2) the face of Kelley's complaint establishes that quasi-judicial immunity applies here. In the published portion of our opinion, we

---

[1] The clerk's papers contain both "Skagren" and "Shagren" as spellings. "Skagren" is the spelling used in the superior court caption below and the court caption on appeal.

hold that Skagren is not entitled to quasi-judicial immunity when acting outside of his statutory GAL functions and under the facts alleged in Kelley's complaint and contained in her declaration; accordingly, the superior court was correct in not dismissing her claims. We affirm.

In the unpublished portion of our opinion, we reject Kelley's argument that we should strike the County's appellate brief because it does not adequately assign error. However, we order $500 in sanctions against the County for including extensive argument in its opening brief on collateral estoppel even though we specifically denied discretionary review of that issue and without even acknowledging our denial of discretionary review.

FACTS

In June 2011, the superior court assigned Skagren as GAL to perform duties under RCW 13.34.100 in the context of a parental termination action. In December, Kelley petitioned the district court for a protection order to protect herself and her son from Skagren, claiming that he had unlawfully harassed her. She alleged that Skagren preyed on her as a vulnerable woman, continuously called and texted her, including when he was under the influence of alcohol; stopped by her job even when she was not there; stopped by her home one night near midnight; and was not performing his GAL duties. She feared that Skagren would retaliate against her and her son in her termination case.

After a hearing, the district court denied her request and dismissed her petition. The district court noted that "[t]he work of Mr. Skagren at the time as a [GAL] permits, in fact, requires a guardian to make certain observations and investigations, and it appears that's what was going on. So this matter is dismissed." CP at 150.

About six months later, Kelley filed a complaint for damages against the County, Skagren, and "Jane Doe" Skagren, alleging that Skagren, as her court-appointed GAL, "used his

2

authority, tasks, tools and premises of his job and assignment to stalk, prey, assault, batter and sexually harass" her. CP at 2. Kelley alleged causes of action (1) under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, for sexual discrimination and/or harassment, gender discrimination, hostile environment, disparate treatment, assault and battery, and unlawful retaliation; (2) for negligent hiring, training, supervision, and retention; (3) for intentional infliction of emotional distress/outrage; and (4) for families with children discrimination.

In lieu of an answer, the County moved to dismiss under CR 12(b)(6), alleging that Kelley's complaint failed to state a claim under the WLAD and that it was barred in its entirety by immunity and collateral estoppel. As part of the motion, the County also submitted Kelley's petition for an order of protection from the district court and the district court's order denying her a protection order. The County argued that (1) Skagren was acting within his GAL duties and was entitled to the protection of quasi-judicial immunity, and (2) collateral estoppel applied because the district court denied Kelley's protection order petition after finding that she had failed to show "actionable activity" because Skagren "was working as a GAL at times of these events." CP at 21.

Kelley moved for a continuance under CR 56(f) in order to conduct discovery and appropriately respond to the County's motion, arguing that the County had essentially moved for summary judgment when it submitted materials outside the pleadings in support of its motion. Kelley argued that quasi-judicial immunity did not apply to sexual harassment claims, that Skagren was not engaged in a judicial function when he sexually harassed her, and that collateral estoppel did not apply because the protection order proceeding involved an entirely different issue and was not a final judgment on the merits.

3

In her responsive declaration, Kelley made allegations similar to those that she had in the protection order matter. Kelley again explained that Skagren had continuously called and texted her, often after midnight, including when he was under the influence of alcohol; sent picture messages of himself holding alcoholic beverages and asking if he could buy her a drink; and stopped by her home and job even when she was not there and, when she was there, he never asked about her son. Moreover, in addition to the allegations Kelley made at the protection order hearing, Kelley also alleged that Skagren talked to her and touched her shoulders, legs, knees, and hair in an inappropriate and sexual manner, constantly pressured her to go on dates with him, offered her money and to help her get her driver's license reinstated, and said that she could "find some way to pay [him] back" in a sexual manner. CP at 50.

The superior court denied the County's motion to dismiss and certified that the case involved controlling questions of law as to which there is substantial ground for a difference of opinion and that immediate appellate review may materially advance the ultimate termination of the litigation. The order noted that the superior court had "reviewed the records and files in this case." CP at 108. Our court commissioner granted discretionary review as to the issue of quasi-judicial immunity and denied discretionary review on the collateral estoppel issue. Regarding collateral estoppel, our commissioner explained, "Unlike the immunity issue, collateral estoppel would confer only a defense against the claim of damages, not immunity from suit. And given the lack of authority to the contrary, the County and Skagren fail to show that the trial court committed obvious or probable error, so discretionary review under RAP 2.3(b)(1) or (2) is not appropriate." CP at 168-69.

4

ANALYSIS

DENIAL OF MOTION TO DISMISS

The County argues that the superior court erred by denying its motion to dismiss and rejecting its argument that quasi-judicial immunity created an absolute bar to liability here.[2] Specifically, the County argues that (1) Washington courts have applied quasi-judicial immunity to GALs in the past, even when acting outside of the courtroom; (2) the face of Kelley's complaint establishes that quasi-judicial immunity applies; and (3) Kelley's previous protection order litigation establishes that quasi-judicial immunity applies.[3] We hold that Skagren is not entitled to quasi-judicial immunity as a matter of law because if the facts alleged in Kelley's complaint and in her declaration are true, Skagren was not acting in a judicial or quasi-judicial function when he engaged in the complained-of actions. Accordingly, the superior court properly denied the County's motion to dismiss.

A. STANDARD OF REVIEW

We apply the de novo standard of review to a superior court's decisions under CR 12(b)(6).[4] *Burton v. Lehman*, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005). Under 12(b)(6), dismissal is appropriate only if "'it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery.'" *Burton*, 153 Wn.2d at 422 (quoting *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). When a superior court considers

---

[2] Skagren and "Jane Doe" Skagren join in the County's appellate opening and reply briefs.

[3] This third argument cites to collateral estoppel law and principles. Under the ruling granting review, collateral estoppel issues are not properly before this court and we consider it no further.

[4] CR 12(b) provides, in part, "that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted."

matters outside the pleadings, a CR 12(b)(6) motion converts to a motion for summary judgment under CR 56. CR 12; *Sea-Pac Co., Inc. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). In this case, the County submitted additional materials to the superior court in its motion to dismiss and the court considered the whole record, including Kelley's additional responsive materials; therefore, we will treat the motion as one for summary judgment.

When reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 407, 282 P.3d 1069 (2012). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Anderson v. Dussault*, 177 Wn. App. 79, 88, 310 P.3d 854 (2013). We construe all facts and reasonable inferences in the light most favorable to the nonmoving party, and we review all questions of law de novo. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005).

## B. QUASI-JUDICIAL IMMUNITY

Judicial immunity does not exist for the benefit of an individual judge but to protect justice. *Lallas v. Skagit County*, 167 Wn.2d 861, 864, 225 P.3d 910 (2009); *Taggart v. State*, 118 Wn.2d 195, 203, 822 P.2d 243 (1992). Therefore, judicial immunity ensures that judges can administer justice without fear of personal consequences. *Lallas*, 167 Wn.2d at 864; *Taggart*, 118 Wn.2d at 203. Quasi-judicial immunity "attaches to persons or entities who perform functions that are so comparable to those performed by judges that it is felt they should share the judge's absolute immunity while carrying out those functions." *Lutheran Day Care v.*

*Snohomish County*, 119 Wn.2d 91, 99, 829 P.2d 746 (1992), *cert. denied*, 506 U.S. 1079 (1993); *Savage v. State*, 127 Wn.2d 434, 441, 899 P.2d 1270 (1995). Therefore, quasi-judicial immunity protects those who perform judicial-like functions to ensure they can also do so without fear of personal consequences. *See Lutheran Day Care*, 119 Wn.2d at 99; *Taggart*, 118 Wn.2d at 203.

"When [quasi-judicial immunity] applies, it is an absolute bar to civil liability and necessarily leaves wronged claimants without a remedy." *West v. Osborne*, 108 Wn. App. 764, 773, 34 P.3d 816 (citing *Lutheran Day Care*, 119 Wn.2d at 99; *Babcock v. State*, 116 Wn.2d 596, 606-08, 809 P.2d 143 (1991)), *review denied*, 145 Wn.2d 1012 (2001). As a result, "caution should accompany any application of absolute immunity." *Lallas*, 167 Wn.2d at 864.

To determine if immunity applies, Washington courts will look to the function the person is performing, rather than to the person who is performing it. *Regan v. McLachlan*, 163 Wn. App. 171, 179, 257 P.3d 1122 (2011) (citing *Lallas*, 167 Wn.2d at 865). This analysis may require a court to examine the functions of the official as set forth in statute. *See West*, 108 Wn. App. at 772-73. Under juvenile dependency and termination statutes, a GAL's function is to represent the child's best interest by investigating the child's situation and reporting to the court. Former RCW 13.34.030(10) (2011); RCW 13.34.105(1). Specifically, RCW 13.34.105(1) provides that the GAL shall

> (a) . . . investigate, collect relevant information about the child's situation, and report to the court factual information regarding the best interests of the child;
> (b) . . . meet with, interview, or observe the child. . . .
> . . . .
> (f) . . . represent and be an advocate for the best interests of the child.

And under RCW 13.34.105(2), a GAL "shall be deemed an officer of the court for the purpose of immunity from civil liability."

7

Our Supreme Court has applied quasi-judicial immunity to a GAL when the GAL was acting "as an arm of the court." *Barr v. Day*, 124 Wn.2d 318, 332, 879 P.2d 912 (1994). We have also applied quasi-judicial immunity to a GAL who was acting within the scope of his statutory duties. *West*, 108 Wn. App. at 773-74.

In *Barr*, Lewis Barr was severely injured in an on-the-job accident. 124 Wn.2d at 321. He and his wife, Ella Barr, brought a tort action against his employer and, with his GAL's recommendation, the parties settled the suit prior to trial. *Barr*, 124 Wn.2d at 321. Ella Barr later sued the GAL, arguing that he negligently approved the settlement. *Barr*, 124 Wn.2d at 321. The Supreme Court reversed this court, holding that the GAL was protected from liability as a matter of law by quasi-judicial immunity. *Barr*, 124 Wn.2d at 321. Citing a GAL's statutory duties, the Supreme Court explained that it was proper to view GALs solely as surrogates of the court in the approval of settlements when they are acting on behalf of incompetents in civil claims because such duties represent "an arm of the court." *Barr*, 124 Wn.2d at 332.

In *West*, Sharon Carter and William West both sought custody of their son in their dissolution proceeding. 108 Wn. App. at 766. The court-appointed GAL interviewed witnesses, consulted therapists, reviewed records, supervised visitation, testified, and filed reports, ultimately recommending that the child be placed with West. *West*, 108 Wn. App. at 767. During the investigation, the GAL's relationship with Carter was "strained" and the court eventually allowed the GAL to withdraw and restrained Carter and the GAL from contacting each other. *West*, 108 Wn. App. at 767. Carter then sued the GAL, alleging that the GAL had negligently recommended that the child be placed with West; committed perjury, was

incompetent, and failed to perform her duties; and had alienated her son from her. *West*, 108 Wn. App. at 767.

The GAL moved for summary judgment, arguing that she was immune under quasi-judicial immunity. *West*, 108 Wn. App. at 767-68. On appeal, we agreed. *West*, 108 Wn. App. at 766. We determined that the case was "the same as [*Barr*, *Adkins*,[5] and *Reddy*[6]]" in that the GAL was acting as an arm of the court at all times; therefore, she was entitled to quasi-judicial immunity. *West*, 108 Wn. App. at 774.

Under RCW 13.34.105(2), *Barr*, and *West*, a GAL is protected by quasi-judicial immunity as "an arm of the court" when performing his statutory duties. *Barr*, 124 Wn.2d at 332; *West*, 108 Wn. App. at 774. Because immunity exists to protect the functions one is performing, rather than the person who is performing them, when a GAL is not acting within his statutory duties, he is not acting as "an arm of the court" and cannot be entitled to quasi-judicial immunity. *Regan*, 163 Wn. App. at 179.

In order for quasi-judicial immunity to apply to Skagren, he must have been performing the GAL's function to investigate facts and to report facts during the conduct in question. Here, we must construe all facts and reasonable inferences in Kelley's favor as the nonmoving party. *Berrocal*, 155 Wn.2d at 590. Kelley alleged in her complaint and declaration that Skagren stalked, preyed, assaulted, and sexually harassed her. Kelley further alleged in her declaration that Skagren repeatedly came to her home and her place of employment and asked her to go on dates with him without asking about her son; that he offered to give her money and to help her

---

[5] *Adkins v. Clark County*, 105 Wn.2d 675, 717 P.2d 275 (1986).

[6] *Reddy v. Karr*, 102 Wn. App. 742, 9 P.3d 927 (2000).

get her driver's license reinstated, saying in a sexual manner that she could "find some way to pay [him] back"; that he would often send her text messages after midnight, including picture messages of himself holding alcoholic beverages and asking if he could buy her a drink; and that he was very "touchy feely" with her and touched her shoulders, legs, knees, and hair in inappropriate ways. CP at 50-51. If these allegations are true, Skagren was not acting within a GAL's function when he engaged in this conduct and, therefore, would not be entitled to immunity.

The County argues that we must apply quasi-judicial immunity under the facts of this case for two reasons. First, the County claims that quasi-judicial immunity is not limited to in-court activities and the *West* court determined that a GAL is acting as an arm of the court "at all times." Br. of Appellant at 11. Although the County is correct that in *West* we determined that the GAL was acting as an arm of the court at all times, we were referring to all times that were relevant in that case. 108 Wn. App. at 774. The phrase "at all times" cannot be taken out of context. We did not hold in *West* that a GAL is always protected or is never acting outside of his GAL duties. Such a result would be absurd.

In *West*, the mother's allegations against the GAL were that the GAL negligently placed the child with his father, that she had committed perjury, that she was incompetent to perform her GAL duties, and that she had alienated her son. 108 Wn. App. at 767. These allegations were aimed at what the GAL did while performing her GAL functions and were not like Kelley's allegations here that Skagren engaged in inappropriate stalking, preying, assault, and sexual misconduct against her outside of his GAL duties. The County also cites to *Reddy v. Karr*, but again, that case was also a lawsuit against a GAL for how the GAL performed her GAL function. 102 Wn. App. 742, 744, 9 P.3d 927 (2000). There was no question that the GAL there was

10

conducting her investigation and evaluation during the times that the mother relied on in her complaint. *Reddy*, 102 Wn. App. at 745-46. Therefore, her case was properly dismissed at summary judgment. *Reddy*, 102 Wn. App. at 753. But these two cases are simply unlike Kelley's case because Kelley alleges that Skagren committed acts outside of his GAL function.

Second, the County argues that the face of Kelley's complaint admits that quasi-judicial immunity must apply because Kelley alleges that Skagren used his court-ordered function to commit the torts alleged. Although Kelley's complaint alleges that Skagren "used his authority, tasks, tools and premises of his job and assignment to stalk, prey, assault, batter and sexually harass Ms. Kelley," Kelley did not allege that Skagren was performing his court-ordered function when he committed the alleged torts. CP at 2. Therefore, Kelley's allegation that Skagren *used* his GAL position as his opportunity to commit the alleged torts against Kelley does not mean that he was acting within his statutory GAL functions when he stalked, preyed, assaulted, and sexually harassed Kelley. Skagren is not entitled to be treated as an "arm of the court" automatically or as a matter of law, even though he may have used his position as a GAL to commit the alleged torts.

Accepting Kelley's allegations as true, we cannot say as a matter of law that Skagren was investigating facts or reporting facts to the court while assaulting and making sexual advances toward Kelley as described in her complaint and declaration. As a result, questions of fact exist as to whether Skagren was acting within his statutory or court-appointed functions when committing the alleged torts, and, therefore, is entitled to quasi-judicial immunity. Accordingly, we affirm the superior court's decision denying the County's motion to dismiss Kelley's case.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

KELLEY'S OBJECTIONS TO COUNTY'S BRIEF

A. KELLEY'S MOTION TO STRIKE COUNTY'S BRIEF

In her response, Kelley argues that the County's appellate brief fails to comply with RAP 10.3(a)(4) because its assignment of error is insufficient. We disagree with Kelley.

Under RAP 10.3(a)(4), an appellant's brief must contain a "separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." The County's assignment of error states, "The trial court erred by denying Pierce County's motions to dismiss and for reconsideration." Br. of Appellant at 1. It then explained that the superior court erred in failing to dismiss on the grounds of quasi-judicial immunity. These statements comply with RAP 10.3(a)(4). It is clear that the County's assignment of error challenges the superior court's order denying the County's motion to dismiss because the court rejected its quasi-judicial immunity argument. The County's assignment of error does not leave room for confusion. We deny Kelley's motion to strike the County's brief and for sanctions on this basis.

B. KELLEY'S MOTION FOR SANCTIONS

Next, Kelley argues in her response that we should sanction the County for its failure to comply with the ruling granting discretionary review that limited our review to only the immunity issue and denied review on the collateral estoppel issue. Additionally, Kelley asks that we award her attorney fees as sanctions for the time it took to unnecessarily respond to the County's collateral estoppel argument.

12

We agree with Kelley that the ruling is clear that it denied appellate review on the collateral estoppel issue. The ruling states, "[T]here does not appear to be 'substantial ground for a difference of opinion' or that 'immediate review of the order may materially advance the ultimate termination of the litigation.'" CP at 168 (quoting RAP 2.3(b)(4)). The ruling clearly denied discretionary review of the issue. Additionally the ruling states, "Unlike the immunity issue, collateral estoppel would confer only a defense against the claim of damages, not immunity from suit. And given the lack of authority to the contrary, the County and Skagren fail to show that the trial court committed obvious or probable error." CP at 168-69. Review was denied under both RAP 2.3(b)(1) and (2).

In its opening brief, the County provided extensive argument regarding collateral estoppel. Further, it failed to acknowledge that our commissioner had denied discretionary review of the collateral estoppel issue. Only in its reply brief does the County assert that it did not violate the commissioner's ruling because its appellant brief does not actually argue collateral estoppel. The County claims that it is proper for it to argue that the district court's *factual findings* below support its argument that immunity applies to Skagren. It concedes that it would not be proper to argue that a district court's legal ruling precludes her claim as a matter of law under collateral estoppel, but contends that it is appropriate to argue that the district court's factual finding is properly considered in determining whether immunity applies to Skagren. We disagree.

Our commissioner explained that we were not accepting review of collateral estoppel because Kelley's allegations against Skagren in her superior court complaint included more allegations than the ones that she made against him in the district court protective order hearing. Specifically, Kelley did not allege to the district court that Skagren engaged in sexual

13

misconduct against her, but she did include allegations of sexual comments and assault for sexual purposes as part of her complaint against Skagren at the superior court level. In this way, Kelley presented different factual issues to the superior court that the district court did not consider. Therefore, the district court's finding that Skagren was engaged in his GAL duties during the events complained of did not take into account any sexual misconduct allegations and the County is not allowed to rely on the district court's finding to support its argument that immunity applies here. Additionally, our commissioner ruled that collateral estoppel, even if proved, would only apply as a defense and not as immunity to suit.

Also, the County argues that it did not argue collateral estoppel in its opening brief, but the second section of its opening brief clearly cites to and relies on collateral estoppel law. This argument was improper under our commissioner's ruling that collateral estoppel is not before us for review. Further, even if the County believed that the commissioner's ruling did not preclude its argument, it should have acknowledged in its opening brief that review had been denied on the collateral estoppel issue. We agree with Kelley that it was a waste of time for her to have to respond to the collateral estoppel arguments as well as for us to have to read and consider the portions of the parties' briefs that improperly addressed collateral estoppel.

Under RAP 10.7, we ordinarily impose sanctions on a party or counsel who files a brief that fails to comply with the RAP rules. And RAP 18.9(a) provides that we can order a party who fails to comply with the RAP rules to pay "terms or compensatory damages to any other party who has been harmed" by the failure to comply or to pay sanctions to the court. Compensatory damages can include an award of attorney fees and costs to the opposing party. *Holiday v. City of Moses Lake*, 157 Wn. App. 347, 356, 236 P.3d 981 (2010), *review denied*, 170

Wn.2d 1023 (2011). Because the County failed to comply with RAP 2.3(e) and made improper arguments in its opening brief, we order $500 sanctions against the County payable to Kelley.[7]

Johanson, A.C.J.

_____
JOHANSON, A.C.J.

We concur:

_____
BJØRGEN, J.

_____
MAXA, J.

---

[7] Kelley acknowledged that she could have filed a separate motion to strike the County's improper argument but chose not to do so because she did not want to further engender delay in this case which had already been subject to delay and disruption by this interlocutory appeal. In *Pugel v. Monheimer*, cited by Kelley, Division One of this court awarded an appellant attorney fees under RAP 18.9 after the respondent had attempted to challenge part of the trial court's findings of fact but failed to file his cross appeal on time. 83 Wn. App. 688, 693, 922 P.2d 1377 (1996), *review denied*, 131 Wn.2d 1024 (1997). Instead, he improperly included in his response brief assignments of error and claims for affirmative relief. *Pugel*, 83 Wn. App. at 693. Because the appellant had to respond to those arguments, Division One awarded attorney fees, noting that "[w]hile it might have been more efficient for [appellant] to move to strike the respondent's brief, unquestionably [respondent's] violation of the rules caused more work for [appellant]. Accordingly, an award of attorney fees is appropriate under RAP 18.9." *Pugel*, 83 Wn. App. at 693. Although we do not award attorney fees, Kelley was harmed by having to respond to improper arguments and we order the County to pay sanctions to Kelley.