# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VICTOR GUENTHER and OLIVIA GUENTHER, a marital community,<br><br>Appellants,<br><br>v.<br><br>GALAXY PACIFIC SERVICES LLC, a Washington limited liability company, and MUHAMMAD JOYIA, an individual,<br><br>Respondents. | DIVISION ONE<br><br>No. 82542-9-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Victor and Olivia Guenther filed a personal injury complaint against Muhummad Joyia, a Canadian resident, and a Washington company, on the mistaken belief that the company was Joyia's employer. The Guenthers attempted to serve Joyia with a copy of the summons and complaint using certified mail. Within days of filing the complaint, the plaintiffs learned that Joyia's employer was a Canadian company with a similar name to the Washington company they had sued. After the statute of limitation expired, Joyia, together with the Canadian company that was not named in the complaint, filed a motion to dismiss the complaint, challenging the sufficiency of service of process. The Guenthers sought to amend the complaint to add the Canadian company as a defendant and requested that the amendment relate back to the original complaint.

However, the Guenthers failed to comply with the requirements of the applicable Washington civil rule when attempting to serve Joyia in Canada by mail, using a form of mail that did not provide a return receipt or other confirmation of delivery when delivered outside of the United States. They also failed to present evidence, to the trial court's satisfaction, establishing delivery of the mailed summons and complaint to Joyia. And because Joyia's actual employer's identity was ascertainable and was, in fact, known to the Guenthers within the applicable limitation period, the delay in seeking to add the correct defendant before the limitation period expired constituted inexcusable neglect. Thus, the trial court did not err when it dismissed the Guenthers' complaint and denied the motion to amend. We affirm.

I

The following facts are not in dispute. On August 28, 2019, Victor and Olivia Guenther (collectively, Guenther) filed a summons and complaint for damages against Muhammad Joyia, a resident of British Columbia, Canada, and Galaxy Pacific Services LLC (GPS LLC), a Washington limited liability company. The complaint alleged that on October 31, 2016, Joyia was driving a commercial semi-tractor trailer in Lewis County in the course of his employment and struck Guenther's vehicle. The complaint further alleged that the collision was attributable to Joyia's negligence and that GPS LLC was liable for the negligence of Joyia, its agent, and for negligently training and/or supervising its employee.

On the same day Guenther filed his compliant, a professional process server personally served a copy of the summons and complaint on the registered

2

agent of GPS LLC in Bellingham. The day before, on August 27, a paralegal employed by Guenther's counsel sent a copy of the summons and complaint to Joyia's address in British Columbia, using certified mail and a return receipt service, and paying an international postage rate.[1] Italicized preprinted language on the certified mail return receipt indicated that its use was limited to "Domestic Mail Only."

The day after Guenther filed his complaint, the registered agent of GPS LLC called Guenther's counsel's office to inform Guenther that GPS LLC did not operate a trucking business in Canada and that a Canadian entity, Galaxy Pacific Services GPS Ltd (GPS Ltd), was the likely intended recipient of the summons and complaint. Having received correspondence for GPS Ltd in the past, the registered agent provided the Department of Transportation identification number associated with GPS Ltd. Upon further research, Guenther's counsel's paralegal verified the information provided by GPS LLC and ascertained the British Columbia address for the Canadian company. With this information, on September 11, 2019, Guenther's counsel arranged for copies of the summons and complaint to be sent to both Joyia and GPS Ltd, again using certified mail and a return receipt service for domestic mail.

---

[1] Joyia points out that the summons erroneously stated that he had 20 days, instead of 60 days, to appear and answer the complaint. See RCW 4.28.180. While a failure to accomplish service of process cannot be cured by amending a summons, errors in the form of a summons are amendable under CR 4(h). Sammamish Pointe Homeowners Ass'n v. Sammamish Pointe LLC, 116 Wn. App. 117, 124, 64 P.3d 656 (2003). Wisely, Joyia does not assert that error in the form of the summons was a basis for dismissal. Sammamish Pointe, 116 Wn. App. at 125-26 (summons that specifies an incorrect time for filing an answer is not a basis for dismissal, absent a showing of prejudice).

On November 28, 2019, counsel filed a notice of appearance on behalf of Joyia and GPS Ltd, "without waiving any objections as to improper service, jurisdiction" or other defenses under CR 12. A month later, Joyia answered the complaint, raising affirmative defenses under CR 12(b) including "insufficiency of process and insufficiency of service of process." GPS LLC did not appear in the action or answer the complaint.

In February 2020, after Guenther noted the case for trial, Joyia and GPS Ltd filed a joint motion to dismiss the complaint under CR 12(b)(5) (defense of insufficient service of process may be asserted by pleading or motion).[2] They argued, among other things, that Guenther failed to effectuate proper service of process under CR 4 within the statutory limitation period. Guenther then filed a motion seeking to amend the complaint. As the statutory limitation period on his claims had expired, Guenther argued that his amended complaint naming GPS Ltd as a defendant should relate back to the date of the original complaint.[3] In a declaration supporting this motion, Guenther's attorney admitted that GPS LLC "has no relation to the matters at issue herein and should be dismissed from this case."

After considering both motions, the responses to the motions, and oral argument, the court entered orders that (1) denied the motion to amend, (2) dismissed claims against defendant GPS LLC, and (3) granted the motion to dismiss the complaint under CR 12(b)(5). The order dismissing the complaint

---

[2] Although GPS Ltd joined in filing the motion to dismiss below, Joyia is the sole respondent on appeal.

[3] The limitation period applicable to a personal injury action is three years. RCW 4.16.080(2).

under CR 12(b)(5) also specifically dismisses claims against both Joyia and GPS Ltd. The trial court later denied Guenther's motion seeking reconsideration or an evidentiary hearing. Guenther appeals.

II

Before addressing the primary substantive issues, we must dispose of two preliminary matters. First, Guenther accomplished valid service of process by personally serving the registered agent of GPS LLC in Washington. Thus, the trial court had personal jurisdiction over that defendant. Therefore, CR 12(b)(5), the basis for the motion to dismiss, did not provide authority to dismiss claims asserted against GPS LLC. But the record is clear that GPS LLC had no connection to the facts alleged by Guenther. Seeking to amend the complaint, Guenther conceded that he had sued the wrong entity and expressly asked the court to dismiss the claims against GPS LLC. The court's order denying the motion to amend the complaint, entered simultaneously with its order granting the motion to dismiss, granted that request and dismissed the claims against GPS LLC with prejudice. Although that order does not specify the legal basis for dismissal, the trial court had authority to dismiss under CR 41(a)(1)(B) (trial court may dismiss any action "[u]pon motion of the plaintiff at any time before plaintiff rests at the conclusion of plaintiff's opening case") or CR 12(b)(6) (dismissal for failure to state a claim upon which relief may be granted). In any event, Guenther does not challenge the dismissal of his claims against GPS LLC.

Second, as Guenther points out, while GPS Ltd joined in filing a motion to dismiss the complaint, it "technically was not a party" to the case. As the

complaint asserted no claims against GPS Ltd, Guenther asserts that the dismissal of claims against GPS Ltd was "not necessary." We agree. However, the trial court's order states that the "Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to CR 12(b)(5) is GRANTED." Having dismissed the claims against GPS LLC in the order on Guenther's motion to amend, the dismissal order thus disposed of the claims against Joyia, the only remaining defendant named in the complaint. The language that follows the ordering clause and purports to dismiss claims against both Joyia and GPS Ltd with prejudice is erroneous, but also superfluous. We need not remand to strike this language because it is clear from the context of the order that it dismisses the complaint, and is necessarily limited to claims against parties named in the complaint.

III

Guenther challenges the dismissal of his claims against Joyia under CR 12(b)(5) for insufficient service of process.

"'[B]eyond due process [requirements],'" Washington law requires compliance with requirements for service of process in order to obtain personal jurisdiction over a party and adjudicate a dispute. Ronald Wastewater Dist. v. Olympic View Water & Sewer Dist., 196 Wn.2d 353, 370, 474 P.3d 547 (2020) (alteration in original) (quoting Weiss v. Glemp, 127 Wn.2d 726, 734, 903 P.2d 455 (1995)); Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014). "This court reviews de novo if service of process was proper." Scanlan, 181 Wn.2d at 847.

Guenther argues that he complied with Washington's rules of civil procedure, namely CR 4(i)(1)(D), when he served the summons and complaint upon Joyia by mail.

CR 4(i) sets forth the following "Alternative Provisions for Service in a Foreign Country":

> (1) *Manner*. When a statute or rule authorizes service upon a party not an inhabitant of or found within the state, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rogatory or a letter of request; or (C) upon an individual, by delivery to the party personally, and upon a corporation or partnership or association, by delivery to an officer, a managing or general agent; or (D) *by any form of mail, requiring a signed receipt, to be addressed and mailed to the party to be served*; or (E) pursuant to the means and terms of any applicable treaty or convention; or (F) by diplomatic or consular officers when authorized by the United States Department of State; or (G) as directed by order of the court. . . . The method for service of process in a foreign country must comply with applicable treaties, if any, and must be reasonably calculated, under all the circumstances, to give actual notice.

> (2) *Return.* Proof of service may be made as prescribed by section (g) of this rule, or by the law of the foreign country, or by a method provided in any applicable treaty or convention, or by order of the court. *When service is made pursuant to subsection (1)(D) of this section, proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court*.

(Emphasis added.)

Guenther concedes that the type of mail he used did not provide a return receipt that confirmed delivery of the summons and complaint because the

selected service was "for domestic mail only within the United States."[4] He maintains that the manner of service still met the requirements of CR 4(i)(1)(D) because he paid the correct rate for international postage. Even without tracking service or delivery confirmation, he claims that this service by mail was "reasonably calculated" under CR 4(i)(1) to provide actual notice of the lawsuit.

But Guenther did not comply with the explicit requirements of CR 4(i)(1)(D) because he did not use a form of mail that required a signed receipt, or any other confirmation of delivery in Canada. That service under CR 4(i)(1) must be "reasonably calculated" to provide actual notice of the legal proceeding initiated in Washington is an additional requirement that applies to all methods of service enumerated under CR 4(i)(1). It is not an alternative to a "form of mail requiring a signed receipt."

Guenther cites Scanlan v. Townsend, 181 Wn.2d at 848, to argue that the absence of a return receipt does not affect the "validity" of service of process. But Scanlan addressed the propriety of "secondhand" personal service, where proof of service was established by the defendant's own testimony and her attorney's stipulation that the defendant received the summons. 181 Wn.2d at 848-49, 856. And more importantly, as the court's reference to Jones v.

---

[4] Guenther sent the summons by certified mail—a service offered by the United States Postal Service (USPS) that provides the sender with a mailing receipt and electronic verification that the mailed item was delivered or that delivery was attempted within the United States. See What Is Certified Mail?, U.S. POSTAL SERV. (May 26, 2021), https://faq.usps.com/s/article/What-is-Certified-Mail. He did not use "Registered Mail International Service," another service offered by USPS which provides both a receipt issued by the office of mailing and a delivery record maintained at the office of destination for the registered item. See Registered Mail International, U.S. POSTAL SERV. (June 15, 2021), https://faq.usps.com/s/article/What-is-Registered-Mail-International. The rule does not prescribe the use of USPS or any particular mail service.

_Stebbins_, 122 Wn.2d 471, 482, 860 P.2d 1009 (1993), makes clear, the court merely confirmed that it is service of process itself, not the return thereof, that confers personal jurisdiction. _Scanlan_, 181 Wn.2d at 848.

Guenther also contends that the lack of a return receipt is not fatal because even without a signed receipt, proof of service may be established under CR 4(i)(2) by "other evidence of delivery to the addressee satisfactory to the court." CR 4(i)(2). But this provision does not excuse compliance with CR 4(i)(1)(D). It simply provides a mechanism to present other evidence that establishes delivery, if despite the use of an appropriate form of mail under CR 4(i)(1)(D), a signed receipt is unavailable.

CR 4(i)(2) does not prescribe the nature or quantum of evidence required. The evidence must be "satisfactory to the court." CR 4(i)(2). As previously explained, where key facts are not in dispute, whether service was proper is a question of law. _See_ _Heinzig v. Seok Hwang_, 189 Wn. App. 304, 310, 354 P.3d 943 (2015). But, as to the precise issue of whether a party has presented sufficient evidence of delivery of a summons and complaint by mail, the express language of CR 4(i)(2) requires deference to the trial court. _See_, _e.g._, _West v. Osborne_, 108 Wn. App. 764, 770, 34 P.3d 816 (2001) (trial court decision to transfer case under RCW 4.12.030(2) upon "satisfactory proof" of a reason to believe an impartial trial cannot be had is reviewed for abuse of discretion); _State v. Noltie_, 116 Wn.2d 831, 835, 837, 809 P.2d 190 (1991) (reviewing for abuse of discretion trial court decision on challenge to juror under RCW 4.44.170, based on proof which "satisfies the court" that the challenged juror cannot try the issue

9

impartially). Guenther suggests in his reply brief that we must review the court's determination under CR 4(i)(2) de novo, but he cites no relevant authority and fails to address the language of the rule.

Here, after Joyia challenged the sufficiency of service of process and produced evidence that Guenther did not comply with CR 4(i)(1)(D), Guenther did not produce a return receipt or evidence of delivery of the summons to Joyia. Guether provided only evidence indicating that the person who mailed the documents selected "international mailing" to calculate the postage and "added in the extra fees" for certified mailing. Guenther insists that the notice of appearance and Joyia's answer to the complaint are "clear evidence that service was sufficient and realized," but this argument runs counter to several long-standing principles.

First, it is well established that mere receipt of process and actual notice alone do not establish valid service of process.[5] Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 177, 744 P.2d 1032, 750 P.2d 254 (1987). Second, filing a notice of appearance does not waive the defense of insufficient service of process. See CR 4(d)(5) (voluntary appearance of a defendant does not preclude challenge to jurisdiction, insufficiency of process, or insufficiency of service of process pursuant to Rule 12(b)); see also Adkinson v. Digby, Inc., 99 Wn.2d 206, 209, 660 P.2d 756 (1983) (notice of appearance does not waive challenge to sufficiency of service of process; to hold otherwise would ignore the civil rules and reinstitute "long-abolished distinction between special and general

---

[5] As discussed infra, actual notice is relevant to the relation back analysis under CR 15(c).

appearances"). And finally, CR 8(c) requires a defendant to affirmatively set forth affirmative defenses in an answer; and a defendant generally waives any affirmative defense not so asserted. See Lybbert v. Grant County, 141 Wn.2d 29, 44, 1 P.3d 1124 (2000). It cannot be the case that an answer required to preserve the defense of insufficient service of process serves to defeat that defense. Guenther cites no authority that supports his position. Reliance on the notice of appearance and/or Joyia's answer to infer valid service of process clearly undermines the law that establishes the legal effect of those actions.[6]

Guenther's reliance on CR 4(i)(1)(E) (service in a foreign country "pursuant to the means and terms of any applicable treaty or convention") and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, T.I.A.S. No. 6638 (U.S. Treaty), 20 U.S.T. 361, 658 U.N.T.S. 163 (Hague Convention) is likewise unavailing. While the Hague Convention does not prohibit service by mail, it does not affirmatively authorize such service. Water Splash, Inc. v. Menon, __ U.S. __, 137 S. Ct. 1504, 1513, 197 L. Ed. 2d 826 (2017). So for purposes of CR 4(i)(1)(E), the "means and terms" of the Hague Convention do not include any provision for service on foreign defendants by certified mail. As the Supreme

---

[6] In his reply brief, Guenther cites Northwick v. Long, 192 Wn. App. 256, 364 P.3d 1067 (2015), to argue that Joyia did not meet his burden to demonstrate improper service. Northwick involved personal service in Washington, in that case, service on the defendant's father at the father's home. 192 Wn. App. at 259. While the defendant claimed he no longer lived in the home, he failed to rebut evidence provided by the plaintiff, including deposition testimony from the process server about his father's statements at the time of service and records showing the father's address as the address on file for the defendant. Northwick, 192 Wn. App. at 264. Northwick is inapposite. Here, Joyia submitted evidence supporting the motion to dismiss that showed a lack of compliance with CR 4(i)(1)(D). In response, Guenther failed to provide a return receipt as proof of service or otherwise present evidence of delivery to Joyia to the court's satisfaction. See CR 4(i)(2).

Court held, service by mail under the Hague Convention is permissible if (1) "the receiving state has not objected to service by mail," and (2) "service by mail is authorized under otherwise-applicable law." Water Splash, 137 S. Ct. at 1513. In this case, the "otherwise-applicable law" is set forth in CR 4(i)(1)(D).[7]

The trial court did not err in dismissing Guenther's complaint based on his failure to accomplish valid service of process in accordance with CR 4.[8]

IV

Guenther next challenges the trial court's denial of his motion seeking to add GPS Ltd as a defendant and for that amendment to relate back to the date of the original complaint.[9]

"CR 15(c) allows plaintiffs who mistakenly sue incorrect defendants to amend their complaints and add the correct defendants, provided the rule's requirements are satisfied." Martin v. Dematic, 182 Wn.2d 281, 292-93, 340 P.3d 834 (2014). CR 15(c) also allows the addition of new parties after the statutory limitation period has run. The rule provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided

---

[7] Guenther's brief on appeal quotes at length from the Ninth Circuit court's decision in Brockmeyer v. May, 383 F.3d 798 (9th Cir. 2004). Brockmeyer is entirely consistent with the United States Supreme Court's later decision in Water Splash, and neither case advances Guenther's position here.

[8] Because we conclude that Guenther did not effectuate valid service under CR 4(i)(1)(D), it is unnecessary to reach Joyia's alternative argument that service was also insufficient because it did not comply with the requirements of Washington's long-arm statute, RCW 4.28.185.

[9] Guenther's motion focused on the requirements of CR 15(c), not CR 15(a), because he sought, outside of the limitation period, to add a new defendant and for the amendment to relate back to the timely original complaint.

12

> by law for commencing the action against the original party, the party to be brought in by amendment (1) has received such notice of the institution of the action that the new party will not be prejudiced in maintaining her or his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the new party.

CR 15(c). The party seeking to amend its complaint has the burden to prove the conditions imposed by the rule are satisfied. Martin, 182 Wn.2d at 288-89. In addition to the textual requirements of this rule, we impose a judicially-created requirement that a plaintiff adding a new party can do so only if the plaintiff's delay in doing so was not due to inexcusable neglect. Martin, 182 Wn.2d at 288. We review de novo a trial court's decision on a motion under CR 15(c).[10] Martin, 182 Wn.2d at 288.

Insofar as Guenther suggests that the judicially-created "inexcusable neglect" prong of CR 15(c) no longer applies in Washington, he is incorrect. In Perrin v. Stensland, 158 Wn. App. 185, 199, 240 P.3d 1189 (2010), we observed that Washington's adherence to inexcusable neglect as a prerequisite for relation back no longer aligns with federal law interpreting the analogous federal civil rule. While characterizing the United States Supreme Court's reasoning for abandoning the requirement in Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 541, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010), as "highly persuasive," we acknowledged that Washington State Supreme Court precedent adopting

---

[10] Joyia argues that the standard of review is an abuse of discretion. See Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 100 Wn.2d 343, 351, 670 P.2d 240 (1983) (involving the addition of new claims). However, the Supreme Court expressly clarified the de novo standard of review for determinations under CR 15(c), recognizing that a different standard of appellate review applies to motions for leave to amend under CR 15(a). See Martin, 182 Wn.2d at 288.

13

inexcusable neglect is binding authority. Perrin, 158 Wn. App. at 200 ("Only our Supreme Court can decide that the 'inexcusable neglect' factor should lose its place as an independent basis for denying relation back under CR 15(c).").

Later, in Martin, our Supreme Court similarly recognized that federal courts have eliminated the inexcusable neglect factor. 182 Wn.2d at 291 (citing Krupski, 560 U.S. at 541). Nonetheless, because neither party in Martin addressed the change in federal law or asked the court "to consider similarly eliminating our 'inexcusable neglect' requirement," the court did not reconsider the issue. Martin, 182 Wn.2d at 291. Applying the requirement to the facts in Martin, the court held that the defendant failed to show that its identity was "easily ascertainable during the limitations period" and therefore failed to demonstrate inexcusable neglect. Martin, 182 Wn.2d at 291-92. Subsequent case law confirms that "inexcusable neglect" remains a component of relation back under CR 15(c). See Price v. Gonzalez, 4 Wn. App. 2d 67, 73, 419 P.3d 858 (2018); Sweeney v. Adams County Pub. Hosp. Dist. No. 2, No. 32486-9-III, slip op. at 5, (Wash. Ct. App. Oct. 25. 2016) (unpublished) https://www.courts.wa.gov/opinions/pdf/324869.pdf.

Under Washington's inexcusable neglect standard, the party opposing the motion must make an initial showing that the correct defendant's identity was "easily ascertainable during the limitations period." Martin, 182 Wn.2d at 290. The burden then shifts to the plaintiff to "give a reason for failing to ascertain the identity of the defendant." Martin, 182 Wn.2d at 291. If the plaintiff cannot provide a "reasonable excuse or show that he or she exercised due diligence,"

14

the failure to name the correct party is the result of inexcusable neglect. Martin, 182 Wn.2d at 291.

The failure to name a party who is "apparent," or "ascertainable upon reasonable investigation," is inexcusable. Teller v. APM Terminals Pac., Ltd., 134 Wn. App. 696, 706-07, 142 P.3d 179 (2006); see S. Hollywood Hills Citizens Ass'n v. King County, 101 Wn.2d 68, 78, 677 P.2d 114 (1984) ("information necessary to properly implead the parties was readily available" but the plaintiff's attorney "simply did not inquire"); see also Haberman, 109 Wn.2d at 174 (identity of corporate defendants could have been easily discovered by plaintiffs from a variety of public sources including documents on file with the secretary of state). A party is charged with counsel's failure to research and identify all necessary parties. Teller, 134 Wn. App. at 707.

Where a party learns the identity of a missing party before the statutory limitation period runs, failure to seek amendment of the complaint is generally the result of inexcusable neglect. Segaline v. Dep't of Labor & Indus., 169 Wn.2d 467, 478, 238 P.3d 1107 (2010). For instance, in Segaline, Croft, a Department of Labor and Industries (Department) employee drafted a "no trespass" notice and presented it to Segaline after he repeatedly conducted himself in a "coarse manner" in a Department building. Segaline, 169 Wn.2d at 470-71. Segaline sued the Department, and the Department informed him, in response to an interrogatory, that Croft had drafted the notice. Segaline, 169 Wn.2d at 478. Segaline did not move to amend his complaint to add Croft as a defendant until nine months later, after the limitation period expired. Segaline, 169 Wn.2d at

15

478. The court held that Segaline's delay was inexcusable neglect.[11] Segaline, 169 Wn.2d at 478.

Guenther asserts—on appeal and below—that he sued the wrong party because of "legitimate confusion" about the identity of Joyia's employer, given that the Washington and Canadian entities have "substantially similar names." And, as below, Guenther's briefing focuses on the two textual requirements of CR 15(c). But we need not address those requirements, because where, as here, a party seeks leave to add additional parties, "inexcusable neglect alone is a sufficient ground for denying the motion." Haberman, 109 Wn.2d at 174 (citing N. St. Ass'n v. City of Olympia, 96 Wn.2d 359, 368, 635 P.2d 721 (1981)). Guenther fails to acknowledge that he was aware of the mistake in August 2019, more than two months before the limitation period expired. His own evidence establishes that his counsel's employee immediately verified that the information provided about the identity of GPS Ltd was "correct."

Under these circumstances, the record establishes that the identity of the correct defendant was "easily ascertainable during the limitations period," as described in Martin, 182 Wn.2d at 290, and Guenther failed to provide a reasonable excuse or show that he exercised due diligence. His failure to name the correct defendant was the product of inexcusable neglect. The trial court did not err in denying Guenther's motion under CR 15(c).

---

[11] The Segaline court applied an abuse of discretion standard to the trial court's determination under CR 15(c), four years before the court clarified the de novo standard of review. Segaline, 169 Wn.2d at 477-78.

V

Finally, Guenther claims that the trial court abused its discretion by failing to conduct an evidentiary hearing to determine whether both Joyia and GPS Ltd had actual notice of the lawsuit within the limitation period and to resolve, through witness testimony, whether the summons and complaint were delivered to the intended recipients in Canada. CR 43(e) states that "[w]hen a motion is based on facts not appearing of record the court *may* hear the matter on affidavits presented by the respective parties, but the court *may* direct that the matter be heard wholly or partly on oral testimony or depositions." (Emphasis added.) This rule is clearly permissive and does not require the trial court to hold an evidentiary hearing on a motion, even when faced with conflicting factual evidence. And here, Guenther waited for the court to rule on his motion before belatedly requesting a hearing in his motion for reconsideration. Guenther has not assigned error to the court's order denying reconsideration. See RAP 10.3(a)(4) (appellant's brief must include a "separate concise statement of each error a party contends was made by the trial court"). And CR 59, which governs motions to reconsider, does not permit a party to assert new issues that could have been raised before entry of an adverse decision. JDFJ Corp. v. Int'l Raceway, Inc., 97 Wn. App. 1, 7, 970 P.2d 343 (1999). Put simply, by not requesting an evidentiary hearing before the court ruled, Guenther waived any claim of error.[12]

---

[12] Guenther contends that—notwithstanding the cited civil rule—Woodruff v. Spence, 76 Wn. App. 207, 210, 883 P.2d 936 (1994), mandated that the trial court hold an evidentiary hearing. Not so. As to GPS Ltd, no such hearing was necessary because the facts concerning the question of inexcusable neglect are undisputed. As to Joyia, there was no dispute involving

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____     _____
Chun, J.                              Smith, J.

---

witness credibility—it is uncontested that the applicable rule was not followed. Moreover, <u>Woodruff</u> applies only to service of process disputes, not to disputes concerning the amendment of complaints.