COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| LORI A. SWEENEY, and JEROLD L. SWEENEY, husband and wife, | ) ) ) | No.    32486-9-III |
| Appellants, | ) ) | |
| v. | ) ) ) | ORDER DENYING MOTION FOR RECONSIDERATION, DENYING ENLARGEMENT |
| ADAMS COUNTY PUBLIC HOSPITAL DISTRICT NO. 2, d/b/a EAST ADAMS RURAL HOSPITAL; and | ) ) ) ) | OF TIME TO FILE MOTION TO PUBLISH, AND AMENDING OPINION |
| ALLEN D. NOBLE, PA-C and JANE DOE NOBLE husband and wife and the marital community thereof, | ) ) ) ) | |
| Respondents. | ) ) | |

THE COURT has considered appellant's motion for reconsideration and motion to enlarge time to publish opinion and is of the opinion the motions should be denied. Therefore,

IT IS ORDERED, the motion for reconsideration and the motion to enlarge time to publish opinion of this court's decision of August 2, 2016, is hereby denied.

IT IS FURTHER ORDERED the opinion filed August 2, 2016, is hereby withdrawn; a new opinion will be filed this day and has been amended as follows:

The portion of the first full paragraph on page 14 that read:

The record shows Ms. Sweeney sought treatment from Dr. Dunlap in 2010 and again in 2012. There was no continuing course of care between

2010 and 2012. Furthermore, there is no showing the 2012 surgery was due to negligence in 2010. Finally, the negligence allegations relate to the care provided in 2010. There is no allegation Dr. Dunlap provided substandard care in 2012.

shall be amended as follows:

> The record shows Ms. Sweeney sought treatment from Dr. Dunlap in 2010 and again in 2012. There was no continuing course of care between 2010 and 2012. Furthermore, there is no showing the 2012 surgery was due to negligence in 2010. Finally, the negligence allegations relate to the care provided in 2010. There is no allegation Dr. Dunlap provided substandard care in 2012.[2]

[2] Even if the issue had been presented, the affidavits of the defense experts do not satisfy *Keck*. There is no showing what a reasonable doctor would or would not have done during the 2012 surgery, or that Dr. Dunlap failed to meet those standards. *Keck*, 184 Wn.2d at 371. Merely alleging a continuing course of conduct does not revive a claim that appellants initially had waived.

PANEL: Judges Korsmo, Siddoway, Pennell

FOR THE COURT:

GEORGE FEARING, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LORI A. SWEENEY, and JEROLD L. SWEENEY, husband and wife, | ) ) ) | No. 32486-9-III |
| Appellants, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| ADAMS COUNTY PUBLIC HOSPITAL DISTRICT NO. 2, d/b/a EAST ADAMS RURAL HOSPITAL; and | ) ) ) ) | |
| ALLEN D. NOBLE, PA-C and JANE DOE NOBLE husband and wife and the marital community thereof, | ) ) ) ) | |
| Respondents. | ) | |

KORSMO, J. — Lori Sweeney and her husband appeal from the dismissal at summary judgment of her medical malpractice action against the physician assistant who initially treated her and the orthopedic surgeon who subsequently performed surgeries on her injured right shoulder. We affirm the dismissal of the action against the surgeon, but conclude that there are unresolved factual questions concerning the claims against the physician assistant and his employer, the Adams County Public Hospital District No. 2.

FACTS

Ms. Sweeney suffered a shoulder injury in a fall at a Ritzville gas station and sought treatment at the emergency room at the East Adams Rural Hospital (EARH). There she was seen by physician's assistant Allen D. Noble. The hospital is not equipped with a magnetic resonance imager, so Mr. Noble had x-rays taken of the shoulder. The x-ray results were uploaded to the Internet and eventually were seen by Dr. James Dunlap.

Mr. Noble diagnosed Ms. Sweeney with a dislocated shoulder and humeral head facture with a 1 cm displacement. Mr. Noble consulted with Dr. Dunlap in Spokane. The two decided the best plan of care was to first manipulate the shoulder back into place. Dr. Dunlap recommended Mr. Noble perform a closed reduction of the shoulder dislocation. A closed reduction is a medical maneuver involving physical manipulation of the shoulder in an effort to pop it back into its socket. It is referred to as a closed reduction because it is done without surgery.

Mr. Noble attempted a closed reduction of the dislocation. The first two attempts were unsuccessful. On the third attempt, Mr. Noble felt a "pop" suggesting the humerus head had moved into the shoulder socket. Clerk's Papers (CP) at 92. However, a post-reduction x-ray showed that while the humerus had moved into better alignment, the humoral head remained inferiorly and anteriorly displaced and a comminuted fracture (a fracture in which the bone is splintered or crushed into numerous pieces) was now

2

visible. The post-reduction x-ray showed separation of the humeral head from the lower part of the bone.

After viewing the post-reduction x-ray, Mr. Noble again contacted Dr. Dunlap. Ms. Sweeney was transferred to Sacred Heart Medical Center in Spokane. Dr. Dunlap performed surgery on Ms. Sweeney's right shoulder three days later on April 28, 2010. Dr. Dunlap provided follow up care and believed the surgery was successful.

Two years later, Ms. Sweeney returned to Dr. Dunlap because she had suffered a rotator cuff tear. Dr. Dunlap performed a surgical repair of the right shoulder's rotator cuff on April 4, 2012.

In late 2012, the Sweeneys consulted an attorney about a possible medical negligence claim due to continued complications with Ms. Sweeney's shoulder. Counsel met with Dr. Dunlap regarding his role in Ms. Sweeney's April 2010 treatment. He assured Dr. Dunlap he did not intend to name him as a defendant at that time and his theory of negligence was against Mr. Noble and EARH. The Sweeneys' attorney brought Ms. Sweeney's medical records to the meeting. The records showed Dr. Dunlap consulted with Mr. Noble while Ms. Sweeney was being treated at EARH. During the meeting, counsel inquired about which x-rays Dr. Dunlap had reviewed and when he had reviewed them. Dr. Dunlap reported that he had no recollection of seeing the pre-reduction x-rays at the time of his consultation with Mr. Noble but remembered the post-reduction x-rays.

3

On April 23, 2013, the Sweeneys filed a medical malpractice claim against Mr. Noble and EARH. The Sweeneys elected not to include Dr. Dunlap as a defendant.

During discovery, the Sweeneys obtained a document known as an "Exam Audit Trail," that identified who had access to the x-rays on the day Ms. Sweeney injured her shoulder. The audit trail showed Dr. Dunlap had access to the pre-reduction x-rays during his April 25, 2010 consultation with Mr. Noble. On January 15, 2014, the Sweeneys amended their complaint to include a negligence claim against Dr. Dunlap.

Both Mr. Noble and Dr. Dunlap requested summary judgment dismissal of the Sweeneys' claims. In support of Mr. Noble's summary judgment motion, he submitted a declaration from Dr. James Nania, a board certified emergency medicine physician with 30 years of experience, who has reduced approximately 200 dislocated shoulders. Dr. Nania opined Mr. Noble complied with the applicable standard of care under the circumstances confronting him on April 25, 2010. On the issue of causation, Dr. Nania specifically described the maneuvers used by Mr. Noble during the three attempts to reduce Ms. Sweeney's dislocation and opined the maneuvers did not involve sufficient forces or torque to produce any new fracturing of Ms. Sweeney's shoulder. In response, the Sweeneys provided a declaration from Dr. Steven R. Graboff, an orthopedic surgeon who opined the culmination of Mr. Noble's three attempts to reduce Ms. Sweeney's shoulder dislocation caused a severely comminuted fracture in at least 3 parts of the right shoulder. Ms. Sweeney also submitted a declaration from physician's assistant, Jeffrey

4

Nicholson, PhD, who opined as a proximate cause of the breach of the standard of care for emergency physician's assistants, Ms. Sweeney sustained what is likely a permanent injury to her right upper extremity.

The trial court found Ms. Sweeney had submitted sufficient expert testimony to raise a material issue of fact on whether Mr. Noble complied with the standard of care. But the court found the Sweeneys had not raised a material issue of fact with respect to causation. In its oral ruling, the court concluded the Sweeneys' "argument fails on the causation element." Report of Proceedings (RP) at 56. The trial court granted summary judgment in favor of Mr. Noble.

Dr. Dunlap argued summary judgment was appropriate because the claim was untimely. The trial court agreed, finding the amended complaint was filed after the three-year statute of limitations for medical malpractice claims had run. *See* RCW 4.16.350. The court further found CR 15's relation-back principles were of no assistance to the Sweeneys because Dr. Dunlap did not have notice that he would be sued; the court reasoned that the "case fails because a new party did not receive notice that he was a target defendant. In fact, he was told just the opposite." RP at 58. The court also rejected the Sweeneys' contention that the "continuing treatment" doctrine prevented the limitations period from beginning to run until after the 2012 rotator cuff surgery; the court observed there was no connection between the 2010 treatment and the 2012 treatment.

The Sweeneys appealed to this court. A panel heard oral argument and, after consulting counsel at argument, stayed the matter pending the decision in *Keck v. Collins*, 184 Wn.2d 358, 357 P.3d 1080 (2015). After the decision issued in *Keck*, the parties filed supplemental briefs and a different panel again heard oral argument in the matter.

## ANALYSIS

The issues presented are whether the trial court appropriately granted summary judgment as to each defendant. After briefly considering the standard of review, we will consider first the claim against Mr. Noble and the hospital before turning to the claim against Dr. Dunlap.

Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Berger v. Sonneland*, 144 Wn.2d 91, 102, 26 P.3d 257 (2001). The moving party bears the burden of demonstrating there is no genuine dispute as to any material fact. *Id.* at 102. This court engages in the same inquiry as the trial court when reviewing an order for summary judgment. *Id.* All facts and reasonable inferences are considered in a light most favorable to the nonmoving party. *Id.* at 102-03. All questions of law are reviewed de novo. *Id.* at 103. Summary judgment also is proper if the plaintiff lacks competent medical evidence to establish a prima facie case. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989), *overruled on other grounds by*, 130 Wn.2d 160 (1996). If a defendant files a motion

6

alleging the lack of such evidence, the plaintiff must then present competent evidence to rebut the defendant's initial showing of the absence of a material issue of fact. *Id.* at 227.

Medical malpractice cases are primarily statutory causes of action. RCW 7.70.040(1) provides that a plaintiff must prove "[t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances." The statutory definition of "health care provider" includes physicians, physician assistants, nurses, and any entity employing such persons, including hospitals or an employee or agent thereof acting in the course and scope of his or her employment. RCW 7.70.020(1), (3).

A plaintiff must next show the failure to exercise the necessary degree of care, skill, or learning "was a proximate cause of the injury complained of." RCW 7.70.040(2). "The applicable standard of care and proximate causation generally must be established by expert testimony." *Grove v. PeaceHealth St. Joseph Hosp.*, 182 Wn.2d 136, 144, 341 P.3d 261 (2014) (citing *Berger*, 144 Wn.2d at 111)). This medical testimony must be based on a reasonable degree of medical certainty. *McLaughlin v. Cooke*, 112 Wn.2d 829, 836, 774 P.2d 1171 (1989).

*Physician Assistant Noble and EARH*

The trial court dismissed the action against Mr. Noble and the hospital in part on the basis that the plaintiffs' expert's affidavit was too conclusory. This ruling requires us

to consider in some detail the decision in *Guile v. Ballard Community Hospital*, 70 Wn. App. 18, 851 P.2d 689 (1993), as well as the decision in *Keck*.

In *Guile*, in response to a *Young*-type summary judgment motion arguing that the plaintiff lacked evidence to support her claim, the plaintiff's expert submitted an affidavit stating that the plaintiff's injury "was caused by faulty technique on the part of the" defendant surgeon. *Id.* at 26. Division One of this court characterized this statement as "merely a summarization of Guile's postsurgical complications, coupled with the unsupported conclusion" that "faulty technique" caused the injury. *Id.* Summary judgment in favor of the doctor was affirmed because the plaintiff lacked an affidavit "that alleged specific facts establishing a cause of action." *Id.* at 27.

*Keck* involved a complicated procedural history that saw the plaintiff's expert filing successive affidavits in opposition to a summary judgment motion. 184 Wn.2d at 364-366. The trial court struck the third affidavit as untimely, but this court determined that the affidavit should have been admitted and found that it sufficed to defeat summary judgment. *Id.* at 367. This court also determined that the second affidavit, timely submitted, was conclusory and did not avert summary judgment. *Id.* The Washington Supreme Court agreed that the trial court had erred in striking the third affidavit, but also concluded that this court had erred in finding the second affidavit insufficient. *Id.* at 368-371.

The court distinguished *Guile*, agreeing that the plaintiff's affidavit there essentially said that a reasonable doctor would not use a faulty technique and failed to state how the defendant had acted negligently. *Id.* at 373. In contrast, the court concluded that the affidavits in *Keck* had stated both a standard of care and breach of that standard when it stated the defendant doctors had "performed multiple operations without really addressing the problem of non-union and infection." *Id.* at 371. The expert also opined that the defendant doctors should have referred the plaintiff to doctors qualified to treat the problems they did not treat. The court concluded that this statement, too, identified another breach of care by the defendant doctors. *Id.* at 372.

As construed in *Keck*, we believe *Guile* stands for the proposition that an expert must identify *facts* that establish the plaintiff's case rather than simply state conclusory opinions. With that understanding, we turn to the affidavit of plaintiffs' expert addressing the issue of causation involving Mr. Noble.[1]

Plaintiffs' experts here stated sufficient facts to avoid summary judgment on causation. Dr. Patten and Dr. Graboff disputed whether the bone was broken before Mr. Noble addressed the shoulder dislocation. Dr. Graboff and Mr. Nicholson both indicated that there was insufficient sedation when Mr. Noble worked on the shoulder. Finally, Mr.

---

[1] No one disputes that there is a question of fact concerning whether Mr. Noble breached the standard of care.

9

Nicholson stated that Mr. Noble should not have attempted the reduction on his own and should not have attempted the second and third maneuvers once the first effort failed.

These affidavits all present questions of fact that, if believed by the jury, would support a verdict in favor of the plaintiffs on a theory that Mr. Noble caused the broken shoulder. *Keck*, 184 Wn.2d at 370, 374. Accordingly, we conclude that the trial court erred in granting summary judgment in favor of Mr. Noble and the hospital.

*Dr. Dunlap*

In contrast, the question presented with respect to Dr. Dunlap is whether the trial court correctly concluded that the statute of limitations barred the claim against him. We agree with the trial court that it did.

There are two statutes of limitation applicable to a medical malpractice action, each having a different accrual date. RCW 4.16.350 provides that a lawsuit alleging medical malpractice must be filed within three years of the "act or omission" giving rise to the claim or one year after the patient "discovered or reasonably should have discovered" that the injury was caused by the act or omission in question. The statute of limitations is an affirmative defense on which the defendant bears the burden of proof. *Haslund v. City of Seattle*, 86 Wn.2d 607, 620-621, 547 P.2d 1221 (1976). Whether a case was filed within the statute of limitations period is normally a question of law to be determined by a judge. *Rivas v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 267, 189 P.3d 753 (2008).

10

Ms. Sweeney was injured on April 25, 2010 and filed an amended complaint, naming Dr. Dunlap as a new defendant on January 15, 2014, more than three years after the date of injury. The Sweeneys, however, argue their amended complaint relates back to their original complaint under CR 15(c).

"CR 15(c) allows plaintiffs who mistakenly sue incorrect defendants to amend their complaints and add the correct defendants, provided the rule's requirements are satisfied." *Martin v. Dematic*, 182 Wn.2d 281, 292-293, 340 P.3d 834 (2014). The rule has one judicially-created and two textual requirements. The text requires that for a claim to relate back under CR 15(c), the added party must have received notice of the action within the limitations period such that he or she will not be prejudiced in maintaining his or her defense on the merits. CR 15(c)(1). Additionally, the added party must have known or should have known that *but for a mistake concerning his or her identity*, the action would have been brought against him or her. CR 15(c)(2). The judicially-created requirement is that a plaintiff adding a new party can do so only if the plaintiff's delay was not due to inexcusable neglect. *Martin*, 182 Wn.2d at 288. "The party seeking to amend its complaint has the burden to prove those conditions are satisfied." *Id*. at 288-289.

Here, the Sweeneys were aware of Dr. Dunlap's role in Ms. Sweeney's care. They obtained her medical records, which clearly state that on April 25, 2010, Mr. Noble consulted with Dr. Dunlap in Spokane and Dr. Dunlap recommended a closed reduction.

11

They even interviewed Dr. Dunlap about his involvement prior to the expiration of the statute of limitations period. The Sweeneys indicated to Dr. Dunlap he was not going to be named a defendant. Indeed, the Sweeneys did not name Dr. Dunlap as a defendant when the original complaint was filed.

The Sweeneys claim they only amended their complaint because they learned, after filing their complaint, that Dr. Dunlap reviewed x-rays before the closed reduction was attempted. But, the April 25, 2010 medical records, which the Sweeneys had prior to filing their complaint, state that Mr. Noble "called Dr. Dunlap (ortho) at this point and he reviewed films on stentor. He recommended us attempting closed reduction." CP at 102. While in a subsequent interview with Dr. Dunlap, the doctor stated that he could not recall looking at the x-rays prior to the recommendation, this is not enough to justify omitting Dr. Dunlap as a defendant given the other information obtained by the Sweeneys prior to the expiration of the limitations period.

Accordingly, Dr. Dunlap was not on notice of the action within the limitations period and he did not know the action would be brought given counsel's assurance he was not going to be included as a defendant. Moreover, the delay was based on inexcusable neglect. "Inexcusable neglect exists when the identity of the defendant is readily available and the plaintiff provides no reason for failing to name the defendant." *Martin*, 182 Wn.2d at 290 (citing *S. Hollywood Hills Citizens Ass'n for Pres. of Neigh. Safety & Env't v. King County*, 101 Wn.2d 68, 78, 677 P.2d 114 (1984) (finding

12

inexcusable neglect where "the information necessary to properly implead the parties was readily available" but the plaintiff's attorney "simply did not inquire")). It is not excusable if the delay is due to "'a conscious decision, strategy or tactic.'" *Id.* at 290 (quoting *Stansfield v. Douglas County*, 146 Wn.2d 116, 121, 43 P.3d 498 (2002)). Reasonable minds could conclude the Sweeneys either mistakenly or consciously decided to exclude Dr. Dunlap as a defendant before the three-year limitations period ran. Thus, CR 15's relate-back principles do not apply.

The Sweeneys also argue the treatment was ongoing and continuous, culminating with the rotator cuff repair, and that they amended their complaint within three years of that final treatment. In addressing this argument, *Caughell v. Group Health Cooperative of Puget Sound*, 124 Wn.2d 217, 876 P.2d 898 (1994), is instructive. There, the court clarified the statute of limitations for medical negligence actions where the plaintiff alleges continuing negligent treatment. Under *Caughell*, the three-year statute of limitations under RCW 4.16.350 does not accrue and begin to run until the last date of negligent medical treatment. In *Caughell*, the plaintiff alleged damages resulting from her physician's ongoing and continuing prescription, over more than 20 years, of a specific medication. *Id.* at 220. The court clarified that the acts must be "part of a substantially uninterrupted course of treatment" to extend the statutory period. *Id.* at 233. The Sweeneys cannot make this showing.

13

The record shows Ms. Sweeney sought treatment from Dr. Dunlap in 2010 and again in 2012. There was no continuing course of care between 2010 and 2012. Furthermore, there is no showing the 2012 surgery was due to negligence in 2010. Finally, the negligence allegations relate to the care provided in 2010. There is no allegation Dr. Dunlap provided substandard care in 2012.[2] Therefore, even if the doctrine were applicable to this case, the limitations period would have begun to run in 2010, the date of the last allegedly negligent treatment, and expired well before the January 15, 2014 amendment that added Dr. Dunlap. "'Under the modified continuing-course-of-treatment rule, claimants must allege that the last negligent act, not simply the end of treatment itself, occurred within 3 years of filing suit.'" *Young Soo Kim v. Choong-Hyun Lee*, 174 Wn. App. 319, 325, 300 P.3d 431 (2013) (quoting *Caughell*, 124 Wn.2d at 229). The Sweeneys have not met this burden. The amended complaint against Dr. Dunlap is untimely under RCW 4.16.350's three-year limitations period.

The claim also fails under RCW 4.16.350's alternative one-year limitations period. A medical malpractice lawsuit may be filed within one year after the patient "discovered or reasonably should have discovered" that the *injury* was caused by the act or omission

---

[2] Even if the issue had been presented, the affidavits of the defense experts do not satisfy *Keck*. There is no showing what a reasonable doctor would or would not have done during the 2012 surgery, or that Dr. Dunlap failed to meet those standards. *Keck*, 184 Wn.2d at 371. Merely alleging a continuing course of conduct does not revive a claim that appellants initially had waived.

14

No. 32486-9-III
*Sweeney v. Adams County Hosp., et al*

in question. RCW 4.16.350. The Sweeneys argue that once they learned of the x-ray review date they amended their complaint within one year. But, as discussed above, this argument is without merit because the Sweeneys did not just "discover" at that point Dr. Dunlap's involvement; they were already aware. More importantly, the Sweeneys did not just then discover the shoulder injury. Accordingly, the facts of this case do not trigger RCW 4.16.350's one year limitation.

The trial court correctly dismissed the action against Dr. Dunlap.

The judgment is affirmed in part, reversed in part, and remanded for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Siddoway, J.

Pennell, J.

15