FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUN 11 AM 10: 31

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ANNE M. PRICE, | ) | No. 76066-1-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| STACY GONZALEZ; JOSE GONZALEZ and SARA GONZALEZ, and the marital community composed thereof, | ) ) ) ) | |
| Respondents. | ) ) | FILED: June 11, 2018 |

APPELWICK, C.J. — Price sued the wrong defendant. The trial court dismissed, because the statute of limitations expired before the proper defendant received notice. Price argues that this was error, because her amendment to the complaint relates back to the original filing of the complaint. We affirm.

## FACTS

Stacy Gonzalez rear-ended Anne Price. Price's declaration describes the exchange of information that occurred immediately after:

> The driver who hit me was an emotional mess – she was crying, had labored breathing, and was shaking. I was very worried for her. I asked her if she was okay and she said no. She said she had just left her doctor's office[1] and her heart was not good. That made me even more worried for her, so I asked again if she as okay. She said no, but that she was on her way to another doctor's appointment. I said that we should call the police or an ambulance but she insisted that we not.

---

[1] Stacy was pregnant at the time.

I suggested we exchange information, so we both went to our cars to get that. I didn't have any paper handy, so my mother gave me a receipt that she had, so I could write on the back of it. I walked back to the other driver and she handed me her insurance card; her hand was shaking. I gave her my insurance card and we each wrote down the other's contact information. The other driver did not write down her name and information on a piece of paper and give it to me – she gave me her insurance card and I wrote down her contact info on my mom's slip of paper. . . .

At no time did the other driver tell me her name, otherwise I would have written it down. The only ID [(identification)] she gave me was her insurance card, she did not show me her driver's license. Based on the information the driver handed to me, I believed her name was Sara Gonzalez.

In fact, Sara Gonzalez was Stacy's[2] mother.

On November 13, 2015, the last day before the statute of limitations expired, Price filed a summons and complaint for personal injuries against Sara Gonzalez. Sara's answer stated that Price had sued the wrong defendant.

The trial court granted Price leave of court to amend her complaint. On January 27, 2016, over two months after the statute of limitations had expired, Price amended her complaint to name Stacy as a defendant, in addition to Sara and Jose Gonzalez.[3] On February 4, 2016, within 90 days of the filing of the original complaint, Sara's attorney accepted service on behalf of both Sara and Stacy. On September 2, 2016, the defendants moved to dismiss. They argued that the amended complaint did not relate back to the original complaint, because Stacy, the proper defendant, did not receive notice within the statute of limitations

_____

[2] We refer to Stacy and Sara Gonzalez by their first names for clarity. We intend no disrespect.

[3] Although the trial court allowed Price to amend the complaint, this did not establish that the action against Stacy was procedurally or jurisdictionally valid under CR 15, which governs relation back of amended complaints.

period, as required by CR 15(c). The trial court granted this motion, because "defendant Stacy Gonzalez did not receive notice of the institution of the action mistakenly brought against her mother within the period of time provided by law for commencing the action against her which was three years from the date of the November 13, 2012 accident."

Price appeals.

## DISCUSSION

Price makes two arguments. First, she argues that her amended complaint relates back to the original complaint under CR 15(c). Second, she alternatively argues that Washington courts should change their interpretation of CR 15(c) to conform to the federal rule that allows relation back of pleadings within 90 days of the expiration of the statute of limitations.

The trial court granted summary judgment to Gonzalez, because it found that Stacy did not receive notice of the institution of the action within the statute of limitations, as required by CR 15.[4] This court reviews de novo a trial court's decision to grant summary judgment. Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922, 296 P.3d 860 (2013). It performs the same inquiry as the trial court, and will affirm an order of summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.

---

[4] The trial court's order is titled in relevant part "order granting defendants' . . . motion to dismiss due to the expiration of the statute of limitations." But, the parties agree that the order was a summary judgment order, despite the order's title, because the trial court considered matters outside the pleadings. When the trial court has considered matters outside the pleadings, this court reviews a trial court's order as a grant of summary judgment. Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

It reviews the evidence in the light most favorable to the nonmoving party, and draws all reasonable inferences in that party's favor. Id.

## I. Relation Back

Price first argues that she satisfied the requirements of CR 15(c). Our Supreme Court has described the purpose CR 15(c) as follows:

> Plaintiffs occasionally sue incorrect defendants by mistake and do not realize who the correct defendants are until after the statute of limitations period expires. We have a court rule that deals with that scenario: CR 15(c). If plaintiffs amend their complaint and meet the requirements of that rule, we treat their amended complaint as "relat[ing] back to the date of the original pleading," and thus timely.

Martin v. Dematic, 182 Wn.2d 281, 288, 340 P.3d 834 (2014) (alteration in original) (quoting CR15(c)).

CR 15(c) has two textual and one judicially created requirements. Id. at 288. The first and second (textual) requirements are:

> [W]ithin the period provided by law for commencing the action against the original party, the party to be brought in by amendment (1) has received such notice of the institution of the action that the new party will not be prejudiced in maintaining her or his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the new party.

CR 15. Third, Washington courts have followed federal courts and added an "inexcusable neglect" prong, which disallows relation back if the error was due to inexcusable neglect. Martin, 182 Wn.2d at 289.

The party seeking for its amended complaint to relate back has the burden to prove these three conditions are satisfied. Id. at 288-89. But, CR 15(c) is to be liberally construed on the side of allowance of relation back of an amendment after

the statute of limitations has run, particularly where the opposing party will be put to no disadvantage. Perrin v. Stensland, 158 Wn. App. 185, 194, 240 P.3d 1189 (2010).

### A. Notice Within the Limitations Period

The first requirement of CR 15(c) is that the added defendant had notice of the action within the period provided by law for commencing the action against the original party. Martin, 182 Wn.2d at 288. Our Supreme Court has interpreted this to mean within the applicable statute of limitations. Id.

Price presents three alternative arguments to satisfy this prong. First, she argues that there is a question of material fact as to whether Stacy had actual notice of the action within the statute of limitations. Second, she argues that knowledge of the action should be imputed from Sara to Stacy due to a "community of interest." Third, she argues that the statute of limitations should be equitably tolled under these facts, and, if so, Stacy would be deemed to have received notice within the appropriate limitation period.

### 1. Actual Notice

Price first argues that there is a question of material fact regarding whether Stacy had actual notice of the complaint within the statute of limitations. Price did not serve Stacy within the statute of limitations period. However, she argues that Stacy's affidavit leaves open the question of whether Stacy received actual notice, on November 13, 2015, the date the statute of limitations expired. Price relies on the specific language of Stacy's affidavit: "Prior to November 13, 2015, I was not aware a lawsuit had been filed against my mother." (Emphasis added.) And,

5

Stacy's declaration states that she did not know about the lawsuit before November 13, 2015. Price asserts that this alleged ambiguity leaves open the possibility that Stacy received notice of the lawsuit on November 13, 2015.

But, other portions of the declaration foreclose this interpretation, even when viewed in the light most favorable to Price. Stacy's declaration states that "it was not until an attorney called my mother about the lawsuit that my mother told me she had been mistakenly sued regarding this accident. I do not recall specifically when this call occurred but it was sometime after November 24, 2015." (Emphasis added.) Sara's declaration states that the first time she heard about the lawsuit was on a call from an attorney, and that that call occurred "[s]ubsequent to" November 13, 2015. (Emphasis added.) Thus, while Stacy did not know of the action before November 13, she also did not know of the action until after November 24. Actual notice has not been established.

2. Community of Interest

Price alternatively argues that knowledge should be imputed to Stacy under a "community of interest" between Stacy and Sara. Price cites four cases where courts have imputed knowledge to misnamed parties when a community of interest exists between the named party and the new party. In Perrin, this court found a community of interest between a deceased defendant and the defendant's estate. 158 Wn. App. at 188, 196. In LaRue v. Harris, 128 Wn. App. 460, 465, 115 P.3d 1077 (2005), the court imputed notice, based on a community of interest, to the insured decedent's estate from a properly served insurer. In both Schwartz v. Douglas, 98 Wn. App. 836, 840, 991 P.2d 665 (2000) and Craig v. Ludy, 95 Wn.

App. 715, 717, 720, 976 P.2d 1248 (1999), this court found a community of interest between a deceased defendant and his insurer, when the original complaint named the deceased defendant, rather than his estate. These four cases all involve a legal alignment of interests such as that between an insurer and insured, or decedent and estate. But, Price cites no Washington authority where a court has found a community of interest based on a factual circumstance such as cohabitation or a familial relationship.[5] This is insufficient to create a community of interest for the purposes of CR 15(c).

### 3. Equitable Tolling

Price alternatively argues that the statute of limitations should be equitably tolled. Equitable tolling permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed. City of Bellevue v. Benyaminov, 144 Wn. App. 755, 760, 183 P.3d 1127 (2008). "[T]his court allows equitable tolling when justice requires." Millay v. Cam, 135 Wn.2d 193, 206, 955 P.2d 791 (1998). "The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." Id.; see also Douchette v. Bethel Sch. Dist. No. 403, 117 Wn.2d 805, 812, 818 P.2d 1362 (1991) ("In the absence of bad faith on the part of the defendant and reasonable diligence on the part of the plaintiff, equity cannot be invoked.") The party asserting that equitable tolling should apply bears the burden

---

[5] Price conceded below that evidence was insufficient to sustain a family car doctrine claim, and that dismissal of any family car claims was appropriate. The family car doctrine is therefore not at issue on appeal.

of proof. <u>Nickum v. City of Bainbridge Island</u>, 153 Wn. App. 366, 379, 223 P.3d 1172 (2009).

Courts typically permit equitable tolling to occur only sparingly, and should not extend it to a garden variety claim of excusable neglect. <u>Benyaminov</u>, 144 Wn. App. at 761. Appellate courts review a decision on whether to grant equitable relief de novo. <u>Trotzer v. Vig</u>, 149 Wn. App. 594, 607, 203 P.3d 1056 (2009).

<u>Trotzer</u> is an example of the hesitancy with which courts apply equitable tolling. In 2000, Vig cleared a walking trail on Trotzer's land, mistakenly believing that it was on his property. <u>Id.</u> at 599. Vig wrote a letter to Trotzer that stated, "In the future, we will never do any work near the property line without first consulting you." <u>Id.</u> at 600. Two years later, Vig and Trotzer met by chance at a store, and briefly conversed. <u>Id.</u> Vig told Trotzer that they intended to extend the trail, but on their own property. <u>Id.</u> Trotzer commissioned a survey, and discovered that some of the trail was on his property. <u>Id.</u> at 600-01.

Trotzer filed a complaint for trespass against the Vigs, but this occurred outside the statute of limitations with respect to the 2000 trespass. <u>Id.</u> at 601, 606. Trotzer argued equitable tolling should apply, because the Vigs' letter gave false assurances that they would consult Trotzer prior to further action. <u>Id.</u> at 606. This court disagreed, and held that equitable tolling did not apply. <u>Id.</u> at 607. Although the meeting was by chance, the court viewed the brief conversation at the store as satisfying that promise to "consult" Trotzer. <u>Id.</u> Thus, it found no false assurances, and no grounds for equitable tolling. <u>Id.</u> <u>Vig</u> illustrates the narrowness with which Washington courts have applied the "false assurances" prong.

Here, no facts suggest that Stacy made a deliberate attempt to mislead. Immediately after the accident, Price observed Stacy to be shaken up. Viewing the facts most favorably to Price, Stacy gave Price her insurance card, but not her driver's license, identification, or name. Nothing suggests that Stacy told Price that she was the person named on the insurance card. She merely gave her the card. Price then made an inference. These facts do not meet RCW 46.52.020(3)'s requirements[6] for information exchange following a collision. But, they do not establish bad faith, or any affirmative false assurances that Stacy was Sara. Nor do they suggest reasonable diligence from Price. In the three years following the collision, nothing in the record suggests that Price used the contact information, the insurance card, the vehicle information, or made any other efforts to verify the driver's true identity. Stacy was the registered owner of the vehicle she was driving, and a cursory records search therefore would have shown that Stacy was likely the driver. But, the only act Price took in identifying the driver was inferring the driver's identity from the insurance card.

Courts should apply equitable tolling only sparingly. As the party seeking relation back under CR 15(c), Price has the burden of showing that Stacy had notice within the statute of limitations period. Martin, 182 Wn.2d 288-89. She has not met that burden.

---

[6] RCW 46.52.020(3) imposes a duty on drivers to exchange certain information at the scene of a motor vehicle accident. Neither party relies on compliance, or lack thereof, with the mandatory exchange of information statute. It is therefore not at issue.

Because Price cannot meet the first prong of the CR 15(c) requirements, we need not address the remaining prongs.

II.   Foreign Authority

Price alternatively argues that Washington courts should align its interpretation of CR 15(c) with federal courts' interpretation of Federal Rules of Civil Procedure (Fed. R. Civ. P.)15(c). .

Washington CR 15(c) states that an amended pleading bringing in a new party will relate back to the original pleading if, "within the period provided by law for commencing the action," the new party had notice and knew or should have known of the action against him or her.  CR 15(c).  The Martin court viewed this as the applicable limitations period.  182 Wn.2d at 288.  By contrast, The federal rule states that an amended pleading bringing in a new party will relate back to the original pleading if, within 90 days after the complaint is filed, the new party had notice and knew or should have known of the action against him or her.  FED .R. CIV. P. 15(c); 4(m).

Price asserts that Washington courts should follow the federal approach. But, this ignores the obvious textual differences between the Washington and federal rules.  "Federal authority is persuasive in interpreting language of a state court rule that parallels a federal rule."  Craig, 95 Wn. App. at 719 n.2.  The Washington rule does not parallel the federal rule in this regard.  Federal courts

allow the 90 day window for adding misnamed parties, because the federal rule explicitly allows this. The Washington rule does not.[7]

The trial court correctly determined that Washington law requires that a misnamed party receive notice of the action within the statute of limitations period.

We affirm.

WE CONCUR:

---

[7] The advisory committee notes highlight the significance of this difference. Fed. R. Civ P. 15(c) advisory committee's note to 1991 amendment. They state that the federal rule was changed in 1991 to explicitly overrule a United States Supreme Court decision that disallowed amendment after the statute of limitations expired. Id. That case, Schiavone v. Fortune, 477 U.S. 21, 30-31, 106 S. Ct. 2379, 91 L. Ed. 2d 18 (1986), held that the Fed. R. Civ. P. 15(c) in place at the time required notice to a misnamed defendant within the statute of limitations period. At the time, former Fed. R. Civ. P. 15(c) (1987) imposed the same requirement that the current Washington CR 15(c) imposes: a pleading will relate back only if the misnamed defendant receives notice "within the applicable limitations period." Id. at 31. The Schiavone court found that the explicit text of the federal rule required notice within the statute of limitations period. See id. The Schiavone court reasoned that any other result would require a change to the text. See id. That change was eventually made, as evidenced by the current federal text.

In effect, we are in the same position that the Schiavone court. The current Washington rule CR 15(c) requires notice within the statute of limitations. Any other approach would require a textual change to Washington CR 15(c). Washington has not made such a change.

# Price v. Gonzalez, No. 76066-1-I

DWYER, J. (dissenting) — Today the majority announces that an individual who leaves the scene of an automobile collision without providing her true name, address, or driver's license—in clear violation of the law—may nevertheless evade civil liability for her wrongful acts. Because I believe that the legislature did not intend to reward a criminal for successfully deceiving the unsuspecting victim of the criminal's tortious actions, I dissent.

On November 13, 2012, a vehicle driven by Stacy Gonzalez crashed into the rear end of Anne Price's vehicle. Stacy did not reveal her name or provide Anne with either her driver's license or any contact information. Rather, Stacy furnished Anne with an insurance card bearing the name of her mother—Sara Gonzalez.[1] Stacy did not inform Anne that the insurance card bore the name of someone other than her. Relying on the information provided to her, Anne filed suit against Sara. By the time that Anne sought to amend her complaint and name Stacy as the rightful defendant, the statutory limitation period had expired.

The majority declines to apply equitable tolling to permit this action to proceed. In so holding, the majority faults Anne for making "an inference" that Stacy complied with the law. The majority further concludes that Stacy's illegal actions following the collision are insufficient to "establish bad faith, or any affirmative false assurances that Stacy was Sara." Majority at 9. I disagree. I believe that, because the law required Stacy to provide her name, address,

---

[1] The trial court's order was effectively a grant of summary judgment. Accordingly, all reasonable inferences are drawn in the light most favorable to Anne Price, the nonmoving party. Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

identification, and insurance information to Anne at the scene of the collision—and because no authority required Anne to affirmatively investigate the veracity of that information—the statutory limitation period is necessarily tolled until such time as the true information, required by statute, is provided.

Equitable tolling is appropriate "when justice requires." Millay v. Cam, 135 Wn.2d 193, 206, 955 P.2d 791 (1998). "The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." Millay, 135 Wn.2d at 206. "In Washington equitable tolling is appropriate when consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations." Millay, 135 Wn.2d at 206.

"[T]here is a strong public policy implicated in preventing individuals from eluding their substantive obligations by simply invoking the statute of limitations." Pub. Util. Dist. No. 1 of Klickitat County v. Walbrook Ins. Co., 115 Wn.2d 339, 349, 797 P.2d 504 (1990). Indeed, "[t]he simple existence of statutes of limitation does not mean exceptions thereto are never appropriate." Sidis v. Brodie/Dohrmann, Inc., 117 Wn.2d 325, 330, 815 P.2d 781 (1991). "'The purpose of the statute of limitations is to compel actions to be commenced within what the legislature deemed to be a reasonable time, and not postponed indefinitely. *However, the statute's operation could be tolled for what the legislature regarded as a good reason.*'" Sidis, 117 Wn.2d at 330 (quoting Summerrise v. Stephens, 75 Wn.2d 808, 812, 454 P.2d 224 (1969)).

-2-

There exists a strong public policy requiring people to stop and disclose information at the scene of an automobile collision. Brown v. ProWest Transp. Ltd., 76 Wn. App. 412, 418, 886 P.2d 223 (1994). This public policy has been codified by our legislature and deemed to be of such significance that criminal liability attaches to those who fail to comply with the statute's requirements. That statute provides:

> **(1) A driver of any vehicle involved in an accident resulting in the injury to or death of any person** or involving striking the body of a deceased person **shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to, and in every event remain at, the scene of such accident until he or she has fulfilled the requirements of subsection (3) of this section;** every such stop shall be made without obstructing traffic more than is necessary.

> (2)(a) **The driver of any vehicle involved in an accident resulting only in damage to a vehicle** which is driven or attended by any person or damage to other property must move the vehicle as soon as possible off the roadway or freeway main lanes, shoulders, medians, and adjacent areas to a location on an exit ramp shoulder, the frontage road, the nearest suitable cross street, or other suitable location. **The driver shall remain at the suitable location until he or she has fulfilled the requirements of subsection (3) of this section.** Moving the vehicle in no way affects fault for an accident.

> (b) A law enforcement officer or representative of the department of transportation may cause a motor vehicle, cargo, or debris to be moved from the roadway; and neither the department of transportation representative, nor anyone acting under the direction of the officer or the department of transportation representative is liable for damage to the motor vehicle, cargo, or debris caused by reasonable efforts of removal.

> (3) Unless otherwise provided in subsection (7) of this section **the driver of any vehicle involved in an accident resulting in injury to or death of any person, or involving striking the body of a deceased person, or resulting in damage to any vehicle which is driven or attended by any person or**

**damage to other property shall give his or her name, address, insurance company, insurance policy number, and vehicle license number** and shall exhibit his or her vehicle driver's license to any person struck or injured or the driver or any occupant of, or any person attending, any such vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person or on his or her behalf. Under no circumstances shall the rendering of assistance or other compliance with the provisions of this subsection be evidence of the liability of any driver for such accident.

(4)(a) Any driver covered by the provisions of subsection (1) of this section failing to stop or comply with any of the requirements of subsection (3) of this section in the case of an accident resulting in death is guilty of a class B felony and, upon conviction, is punishable according to chapter 9A.20 RCW.

(b) **Any driver covered by the provisions of subsection (1) of this section failing to stop or comply with any of the requirements of subsection (3) of this section in the case of an accident resulting in injury is guilty of a class C felony and, upon conviction, is punishable according to chapter 9A.20 RCW.**

(c) Any driver covered by the provisions of subsection (1) of this section failing to stop or comply with any of the requirements of subsection (3) of this section in the case of an accident involving striking the body of a deceased person is guilty of a gross misdemeanor.

(d) This subsection shall not apply to any person injured or incapacitated by such accident to the extent of being physically incapable of complying with this section.

(5) **Any driver covered by the provisions of subsection (2) of this section failing to stop or to comply with any of the requirements of subsection (3) of this section under said circumstances shall be guilty of a gross misdemeanor:** PROVIDED, That this provision shall not apply to any person injured or incapacitated by such accident to the extent of being physically incapable of complying herewith.

- 4 -

(6) The license or permit to drive or any nonresident privilege to drive of any person convicted under this section or any local ordinance consisting of substantially the same language as this section of failure to stop and give information or render aid following an accident with any vehicle driven or attended by any person shall be revoked by the department.

(7) If none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (3) of this section, and no police officer is present, the driver of any vehicle involved in such accident after fulfilling all other requirements of subsections (1) and (3) of this section insofar as possible on his or her part to be performed, shall forthwith report such accident to the nearest office of the duly authorized police authority and submit thereto the information specified in subsection (3) of this section.

RCW 46.52.020 (emphasis added).

Here, pursuant to RCW 46.52.020, Stacy was legally required to take the affirmative step of furnishing Anne with all of the information necessary to identify herself immediately following the collision. Stacy did not comply with the law. Rather, she provided Anne with the name and insurance information of another individual—her mother—thereby concealing her identity and violating the law. Stacy's refusal to provide her personal information at the scene of the collision was contrary to longstanding public policy and RCW 46.52.020. Her refusal establishes bad faith or false assurances.

Conversely, Anne complied with the requirements of RCW 46.52.020 and brought a claim against the individual named on the insurance card that was provided to her at the scene of the collision. Anne was under no legal duty to independently research or verify that the information provided to her at the scene was true. To the contrary, the "inference" drawn by Anne in accepting that

- 5 -

information as true was one protected by the force of law. No further action was required of Anne to establish that she acted diligently under these circumstances. Her compliance with applicable statutory requirements establishes her diligence, as determined by the legislature.

It is untenable that Stacy's violation of the statute's requirements could result in criminal liability but be insufficient to establish bad faith or false assurances in the context of a civil action. Such a result does nothing to advance the purposes of either the statute of limitation or the hit and run statute. Today's decision, in fact, undercuts the legislature's goal in passing the hit and run statute. Rather than penalizing the noncompliant, the majority deems them worthy of windfalls.

I disagree that our legislature intends to allow criminals who successfully conceal their identities to escape civil liability for their tortious actions. Stacy's noncompliance with the requirements of RCW 46.52.020 establishes bad faith or false assurances. Anne's compliance with the statute, standing alone, is sufficient to establish that she acted with diligence. Accordingly, I would hold that the statutory limitation period was equitably tolled.

It is not just to incentivize criminality. It is not just to deny recompense to the victim of criminality. I would reverse the order of dismissal.